114 P.3d 637 (2005)
154 Wash.2d 477
Jessy A. ANG, M.D., and Editha A. Ang, husband and wife; and Evergreen Medical Panel, Inc., a Washington corporation, Petitioners,
v.
Michael G. MARTIN and Jane Doe Martin, his wife, and the marital community comprised thereof; and Richard Hansen and Jane Doe Hansen, his wife, and the marital community comprised thereof, Respondents.
No. 74698-2.
Supreme Court of Washington, En Banc.
Argued October 26, 2004.
Decided June 23, 2005.
*639 Robert B. Gould, Seattle, for Petitioners.
Sam Breazeale Franklin, Marc Rosenberg, Lee Smart Cook Martin & Patterson, Seattle, Christopher Holm Howard, David R. Ebel, M Owen Gabrielson, Holland Knight LLP, Seattle, for Respondents.
*638 OWENS, J.
¶ 1 We are asked to determine whether plaintiffs in a malpractice action against their former criminal defense attorneys were properly required to prove by a preponderance of the evidence that they were actually innocent of the underlying criminal charges. The Court of Appeals concluded that, as an element of their negligence claim, plaintiffs were required "to prove innocence in fact and not merely to present evidence of the government's inability to prove guilt." Ang v. Martin, 118 Wash.App. 553, 558, 76 P.3d 787 (2003). We affirm the Court of Appeals.

FACTS
¶ 2 Psychiatrist Jessy Ang and his wife Editha jointly owned Evergreen Medical Panel, Inc., a company that provided the Washington State Department of Labor and Industries with independent medical examinations of injured workers. As a result of Dr. Ang's contact with a target of a governmental task force investigating social security fraud, Dr. Ang himself became a person of interest. In February 1994, the task force executed a search warrant on Dr. Ang's office and seized copies of two sets of signed tax returns that reported conflicting amounts of income. The Angs were arrested in April 1996, following the execution of a search warrant at their residence. A year later, the Angs were indicted on 18 criminal counts, including conspiracy to defraud the United States, bank and tax fraud, and filing false statements.
¶ 3 The Angs retained defendants Richard Hansen and Michael G. Martin for flat fees of $225,000 and $100,000, respectively. Attorneys Hansen and Martin engaged in a round of plea negotiations prior to trial, but the Angs rejected the plea bargain. The case proceeded to a jury trial before Judge Tanner in federal district court in December 1997. On the fifth day of trial, just prior to the conclusion of the government's case, Hansen and Martin recommended that the Angs accept another proffered plea, one that the Angs viewed as the least attractive of any agreement previously presented. After Dr. Ang was allegedly told that Mrs. Ang could face sexual assault in prison, the Angs agreed to plead guilty to two of the 18 counts.
¶ 4 The Angs then engaged attorney Monte Hester to review the plea discussions and provide a second opinion. Hester concluded that the government had not met its burden of proof and that the plea agreement provided the Angs with no material benefit. Retaining Hester and Keith A. MacFie to represent them, the Angs successfully moved to withdraw the pleas, which Judge Tanner had never formally accepted. In September 1999, the matter again proceeded to trial before Judge Tanner, with the Angs waiving their right to a jury. Although the government offered another plea bargain prior to trial, one requiring no plea on Dr. Ang's part, a misdemeanor or felony for Mrs. Ang, and a $500,000 fine, the Angs rejected the plea and were acquitted on all 18 counts.
¶ 5 The Angs, along with Evergreen Medical, filed the present legal malpractice action against Hansen and Martin in May 2000 in Pierce County Superior Court. The complaint stated claims for legal malpractice and for violations of the Washington Consumer Protection Act, chapter 19.86 RCW. The trial court denied the defendants' motion for summary judgment, and a jury trial began in November 2001. The trial court instructed the jury that the Angs had to prove by a preponderance of the evidence that they were innocent of the underlying criminal charges. On January 11, 2002, responding to the initial two questions on a special verdict form, the jury found that the Angs had not "proven by a preponderance of the evidence [they were] innocent of all the criminal charges against [them]." Clerk's Papers at *640 1663-64. As to the verdict form's third question, asking whether "any of the defendants [had been] negligent," the jury made a finding of negligence against Martin only. Id. at 1664.
¶ 6 The plaintiffs appealed, but the Court of Appeals affirmed. This court granted the plaintiffs' petition for review.

ISSUES
¶ 7 (1) Where a legal malpractice suit stems from the representation of clients in a criminal prosecution, must plaintiffs who were acquitted of the criminal charges prove their actual innocence of the crimes, or does their acquittal satisfy the innocence element of their malpractice action?
¶ 8 (2) Did the Angs properly request review of jury instruction 13, which directed the jury to determine the Angs' innocence of the criminal charges but provided no legal definitions of the named crimes, relying instead on the jury's access to the proposed instructions from the criminal trial?

ANALYSIS
¶ 9 Standard of Review. The Angs contend that the trial court erred in requiring them to prove, in their malpractice suit against former defense counsel, their actual innocence of the underlying criminal charges. They also assert that the court inadequately instructed the jury on the definitions of those charges. As with all questions of law, the issues presented here are reviewed de novo. Kommavongsa v. Haskell, 149 Wash.2d 288, 295, 67 P.3d 1068 (2003).
¶ 10 Essential Elements of Legal Malpractice Claims against Criminal Defense Counsel. A plaintiff claiming negligent representation by an attorney in a civil matter bears the burden of proving four elements by a preponderance of the evidence:
(1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.
Hizey v. Carpenter, 119 Wash.2d 251, 260-61, 830 P.2d 646 (1992); Bowman v. John Doe Two, 104 Wash.2d 181, 185, 704 P.2d 140 (1985) (noting that, in legal malpractice suits, proof of attorney-client relationship is grafted onto customary elements of negligence claim). The fourth element, proximate causation, includes "[c]ause in fact and legal causation." Hartley v. State, 103 Wash.2d 768, 777, 698 P.2d 77 (1985). Cause in fact, or "but for" causation, refers to "the physical connection between an act and an injury." Id. at 778, 698 P.2d 77. In a legal malpractice trial, the "trier of fact will be asked to decide what a reasonable jury or fact finder [in the underlying trial or `trial within the trial'] would have done but for the attorney's negligence." Daugert v. Pappas, 104 Wash.2d 254, 258, 704 P.2d 600 (1985) (emphasis added). Legal causation, however, presents a question of law: "It involves a determination of whether liability should attach as a matter of law given the existence of cause in fact." Hartley, 103 Wash.2d at 779, 698 P.2d 77. To determine whether the cause in fact of a plaintiffs harm should also be deemed the legal cause of that harm, a court may consider, among other things, the public policy implications of holding the defendant liable. Id. In "criminal malpractice" suits,[1] two elements related to proximate causation have been added. In Falkner v. Foshaug, 108 Wash.App. 113, 29 P.3d 771 (2001), the Court of Appeals "conclude[d] that postconviction relief is a prerequisite to maintaining [a criminal malpractice] suit and proof of innocence is an additional element a criminal defendant/malpractice plaintiff must prove to prevail at trial in his legal malpractice action." Id. at 124, 29 P.3d 771 (emphasis added); see also id. at 123, 29 P.3d 771 (referring to "an actual innocence requirement").
*641 ¶ 11 The trial court in the present case thus instructed the jury as follows on the elements of the Angs criminal malpractice claims:
To prove their legal malpractice claims, the plaintiffs bear the burden of proving by a preponderance of the evidence each of the following:
First, that there is an attorney-client relationship giving rise to a duty owed by a defendant to a plaintiff;
Second, that plaintiffs have obtained a successful challenge to their convictions based on their attorneys failure to adequately defend them;
Third, that plaintiff was innocent of the crimes charged;

Fourth, that there is an act of omission by a defendant that breached the duty of care of an attorney;
Fifth, that a plaintiff was damaged; and
Sixth, that a breach of duty by a defendant is a proximate cause of a plaintiffs damages....[[2]]
The Angs assigned error to this instruction, contending that their undisputed acquittal of the criminal charges met not only the additional element of postconviction relief but also the innocence requirement.
¶ 12 By successfully withdrawing their guilty pleas and receiving an acquittal on all charges, the Angs unquestionably received the equivalent of postconviction relief,[3] but contrary to their contention, they did not thereby satisfy the Falkner courts innocence requirement. The Angs mistakenly claim that, under Falkner, they were simply required to prove legal innocence, not actual innocence. See Shaw v. State, 861 P.2d 566, 570 n. 3 (Alaska 1993) (Shaw II) (noting that "[l]egal guilt or innocence is that determination made by the trier of fact in a criminal trial," whereas "[a]ctual guilt is intended to refer to a determination in a civil trial, by a preponderance of the evidence, that the defendant engaged in the conduct he was accused of in the prior criminal proceeding"). But the Falkner court referred explicitly to the "actual innocence requirement" and at no point equated the innocence requirement with legal innocence.[4] Plainly, a requirement of legal innocence would have been redundant alongside the additional, unchallenged requirement of postconviction relief and would have necessitated a confusing overlay of standards of proof, requiring the malpractice jury to consider whether the Angs had proved by a preponderance of the evidence that they would not have been found guilty beyond a reasonable doubt in the underlying criminal trial. See Wiley v. County of San Diego, 19 Cal.4th 532, 79 Cal.Rptr.2d 672, 966 P.2d 983, 990 (1998) (observing that, as to dual standards of proof, "mental gymnastics required to reach an intelligent verdict *642 would be difficult to comprehend much less execute").
¶ 13 Moreover, proving actual innocence, not simply legal innocence, is essential to proving proximate causation, both cause in fact and legal causation. Falkner, 108 Wash.App. at 115, 29 P.3d 771 (noting that criminal malpractice plaintiff must prove that "deficient representation, not his illegal acts, ... [was] the proximate cause" of harm). Unless criminal malpractice plaintiffs can prove by a preponderance of the evidence their actual innocence of the charges, their own bad acts, not the alleged negligence of defense counsel, should be regarded as the cause in fact of their harm. Likewise, if criminal malpractice plaintiffs cannot prove their actual innocence under the civil standard, they will be unable to establish, in light of significant public policy considerations, that the alleged negligence of their defense counsel was the legal cause of their harm. Summarizing the policy concerns, the Falkner court observed that, "[r]equiring a defendant to prove by a preponderance of the evidence that he is innocent of the charges against him will prohibit criminals from benefiting from their own bad acts, maintain respect for our criminal justice systems procedural protections, remove the harmful chilling effect on the defense bar, prevent suits from criminals who may be guilty, [but] could have gotten a better deal, and prevent a flood of nuisance litigation." 108 Wash.App. at 123-24, 29 P.3d 771 (footnotes omitted) (quoting Stevens v. Bispham, 316 Or. 221, 851 P.2d 556, 565 (1993)).
¶ 14 In the alternative, the Angs argue that, if a plaintiffs actual guilt or innocence has any place in a criminal malpractice suit, the issue should be raised as an affirmative defense, not as an element of the plaintiffs cause of action. The Angs find support in Shaw II, the only decision adopting the actual innocence requirement and shifting to the criminal malpractice defendant "the burden of proof by a preponderance of the evidence as to the actual guilt of the plaintiff." 861 P.2d at 572. As respondent Martin explained, however, "[t]he criminal defendant/malpractice plaintiff is in a far better position to bear the burden of establishing innocence," since, unlike his defense attorney, he "knows if he is actually innocent," "was, presumably, present or involved in the underlying events which led to the criminal charges," "has unlimited access to the information about his own acts necessary to prove innocence," "would know what, if any, inculpatory facts he withheld from his lawyer," and would have the "opportunity to accept a plea, potentially an Alford plea which could preserve his malpractice claim, before all facts and witness testimony have been developed or are known to his or her attorney." Suppl. Br. of Respt Martin at 13. We find this practical analysis persuasive and thus decline to adopt the minority position of Shaw II.
¶ 15 In sum, we conclude that the Angs were properly required to prove by a preponderance of the evidence that they were actually innocent of the underlying criminal charges. We therefore affirm the Court of Appeals.
¶ 16 Plaintiffs Challenge to Adequacy of Jury Instructions on Underlying Criminal Charges. Instructing the jury that the Angs were required to prove their innocence of the criminal charges, the court identified those charges as "Tax Fraud, Bank Fraud, False Statement, and Conspiracy." Jury Instruction 13, Br. of Appellants, App. 3. When the jury interrupted its deliberations to ask the court for the legal definitions of the charges, the court, in concert with counsel, advised the jury to "review carefully this Court's instructions and the evidence (testimony and exhibits) admitted into evidence." 27 Verbatim Report of Proceedings at 3822-30. (Among the exhibits admitted into evidence were the government's and plaintiffs' proposed jury instructions in the underlying criminal case.) Although the Angs counsel "readily agree[d]" to the courts response to the jurors question, the Angs now contend that the trial court should have instructed the jury on the elements of each of the charged crimes. Id. at 3823.
¶ 17 This issue was not adequately raised. In their opening brief below, none of the Angs' six assignments of error mentioned this alleged deficiency in the jury instructions, nor did any of their seven "issues *643 pertaining to the assignments of error" address the trial court's failure to instruct the jury on the elements of the underlying criminal charges. RAP 10.3(a)(3). While the Angs' fifth issue was whether it was "error in the legal malpractice trial to give the jury no instructions as to how to determine the plaintiffs' `innocence,'" the issue was tied to the first two assignments of error and therefore pertained to the definition of the innocence requirement in Falkner (that is, whether "innocence" meant actual or legal innocence). Br. of Appellants at 3. In any case, the Angs' brief contained no argument or citation to authority on the question of whether, in light of the jury's access to the proposed instructions from the criminal trial, jury instruction 13 was adequate. See State v. Olson, 126 Wash.2d 315, 321, 893 P.2d 629 (1995) (approving "proposition that when an appellant fails to raise an issue in the assignments of error, in violation of RAP 10.3(a)(3), and fails to present any argument on the issue or provide any legal citation, an appellate court will not consider the merits of that issue"). The Angs incidental allusion (in a footnote in their opening brief) to the absence of "standard criminal law instructions" is inadequate to satisfy RAP 10.3(a)(3). See Br. of Appellants at 29 n. 5.

CONCLUSION
¶ 18 We conclude that, as plaintiffs in a criminal malpractice action, the Angs were properly required to prove by a preponderance of the evidence that they were actually innocent of the underlying criminal charges. We find no persuasive reasons for this court to follow the minority position and shift the burden to the defendant attorneys to prove that their former clients were actually guilty of the charged crimes. Finally, in light of RAP 10.3(a)(3) and prior precedent, which require an appellant to make "separate concise" assignments of error, tie those errors to legal issues, and argue those issues with some citation to authority, we decline to review the Angs' challenge to jury instruction 13. We affirm the Court of Appeals.
C. JOHNSON, MADSEN, BRIDGE and FAIRHURST, JJ., concur.
SANDERS, J. (dissenting).
¶ 19 I dissent because the malpractice standard for criminal cases should be the same as civil. There is no reason to invite malpractice in criminal cases by heightening the plaintiff's burden to prove postconviction relief and actual innocence. In every situation a client should rightfully expect competent legal representation.
¶ 20 We have clearly stated the standard for legal malpractice:
To establish a claim for legal malpractice, a plaintiff must prove the following elements: (1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.
Hizey v. Carpenter, 119 Wash.2d 251, 260-61, 830 P.2d 646 (1992). This rule does not suggest the additional requirements the majority adds to cases of criminal malpractice, namely, postconviction relief and proof of actual innocence. I see no reason to add them.
¶ 21 The majority cites a Court of Appeals case, Falkner v. Foshaug, 108 Wash.App. 113, 29 P.3d 771 (2001), to support additional elements. Majority at 640. The Court of Appeals opinion Falkner is not binding authority, nor is case law from other jurisdictions upon which Falkner is based. See Falkner, 108 Wash.App. at 118-19 & nn. 8-13, 29 P.3d 771. Nor am I persuaded by its logic. Attorneys who negligently represent their clients should be responsible for any harm that results from the misconduct. It does not matter if the subject matter of the case is civil or criminal. Forcing criminal defendants to prove actual innocence does not serve any purpose except to frustrate the client's right to competent representation.
¶ 22 Citing a "public policy" present in the minds of the individuals in the majority, the majority argues the defendant's acts should be viewed as the cause of any harm unless he demonstrates his innocence. Majority at 642. However, our constitution sets the "public policy" which entitles criminal *644 defendants to adequate representation. I prefer that policy as my guide.
¶ 23 The issue is causation. Under our precedent, cause in fact is determined by the jury as a question of fact. Hartley v. State, 103 Wash.2d 768, 778, 698 P.2d 77 (1985). Cause in fact is a minimum threshold that asks but for the lawyer's negligence would the client have been harmed. In other words, would the result be different if the lawyer had used reasonable care? See Daugert v. Pappas, 104 Wash.2d 254, 258, 704 P.2d 600 (1985) ("In effect the second trier of fact will be asked to decide what a reasonable jury or fact finder would have done but for the attorney's negligence.").
¶ 24 Legal causation is a subsequent inquiry, asking as a matter of law whether liability should attach. Hartley, 103 Wash.2d at 779, 698 P.2d 77. The majority argues a criminal defendant should not profit from his crimes, and hence the defense attorney should not be liable for his negligence unless the defendant first proves his own innocence. Majority at 642. I disagree. The criminal defendant is equally entitled to competent representation, and the negligent attorney should take responsibility for his malpractice. The majority's rule simply invites malpractice since the defense attorney knows he is held to a lower standard. Proving innocence is impossible since a negative cannot be proved.[1]
¶ 25 Here the Angs's defense attorneys, Michael Martin and Richard Hansen, recommended a particular plea agreement. The Angs initially agreed but later withdrew the plea on recommendation from new counsel and were acquitted on all charges at a subsequent trial. They sued their former defense attorneys and a jury found that Martin alone was negligent even though it found the Angs had not proved their innocence by a preponderance of the evidence. Since the latter consideration should be irrelevant, Martin should bear the responsibility for his negligence. I would reverse as to Martin, and remand for a trial on damages.
¶ 26 I dissent.
ALEXANDER, C.J. (concurring in dissent).
¶ 27 I agree with Justice Sanders that the trial court erred in instructing the jury that Jessy and Editha Ang had to prove that they were actually innocent of the crime charged in order to prevail in their legal malpractice claim against attorneys Richard Hansen and Michael Martin. For that reason, we should reverse the Court of Appeals and remand to the trial court for a new trial on the Angs' claim against Martin.
¶ 28 I write separately because, in my view, we should not stop with a determination that the trial court erred but should go further to indicate that the defendant attorney may raise the issue of the plaintiff's actual guilt in the criminal case as an affirmative defense. That was the position taken by the Supreme Court of Alaska in a similar case, Shaw v. Department of Administration, 861 P.2d 566 (1993). There, the court said that because plaintiffs in such actions must already bear the burden of proving that they have obtained postconviction relief from their criminal convictions, they should not have to prove their "actual innocence." Id. at 572. The court went on to indicate, however, that the defendant may raise the issue of the plaintiff's "actual guilt" as an affirmative defense and seek to establish it by a preponderance of the evidence. Although the Alaska court did not engage in an extensive discussion of its reasons for placing the burden on the defendant to establish this affirmative defense, it did indicate that putting the burden there is consistent with the requirement that defendants establish traditional affirmative defenses that look to plaintiffs' actions such as contributory/comparative negligence and assumption of the risk. The Alaska rule makes perfect sense to me for that reason and for the additional reason *645 that it is consonant with the traditional notion that one is presumed innocent until proven guilty beyond a reasonable doubt. Furthermore, shifting the burden to the defendant relieves the plaintiff of the almost impossible burden of proving innocence while at the same time addressing the policy concern noted by the majority, that criminals should not benefit from "their own bad acts." Majority at 642.
IRELAND, J. Pro Tem., concurs.
CHAMBERS, J. (concurring in dissent).
¶ 29 I concur in Justice Sanders' dissent but write separately to express my indignation that this court, based upon the policy of protecting lawyers, would carve out a special protection for criminal defense attorneys whose acts of professional negligence are harmful to their clients. Under this logic, it is not enough for the injured client to prove actual harm from the attorney's failure to meet professional standards; the injured client must also prove that her hands were always clean. Under this logic, why not give immunity to accountants for professional negligence unless the accountant's client can prove he or she never understated income or requested an unavailable deduction, even when the accountants' bad acts caused actual harm to their clients or society? Surely tax dodgers should not profit from their misdeeds. Under this logic, why not give immunity to health care providers who harm their patients unless the patient can prove perfect good health but for the negligence of the provider? Surely the unhealthy should not profit from their illness.
¶ 30 But this logic ignores the fact that professionals owe a duty to the sick as well as the healthy; to the scrupulously honest business woman as well as the one looking for the angle; to the guilty as well as the innocent. Those of us caught in the grip of the law are always entitled to competent legal representation whether or not we are totally innocent. The heart of the criminal defense lawyer's job is often not to prove absolute innocence; the irreducible core of the job is to make the state prove its case and make the best case for the defendant possible. Often the sole issue is the level of culpability and the sanction to be imposed upon the client. The government may seek multiple counts where a single count is appropriate, seek charges of a higher degree than the evidence supports, or seek a sentence disproportionate to the offense. The negligence of her lawyer may cost her client her fortune, her liberty, or her life. The "actual innocence" requirement is impractical and harmful in the area of criminal malpractice law; it creates an almost impossible burden and provides almost absolute immunity to criminal defense lawyers.
¶ 31 The most troubling aspect of the actual innocence requirement announced by the majority lies with its origin. It is based upon a policy to protect lawyers from lawsuits. Tort actions are maintained for a variety of reasons, including the deterrence of wrongful conduct. Ford v. Trendwest Resorts, Inc., 146 Wash.2d 146, 154, 43 P.3d 1223 (2002); RESTATEMENT (SECOND) OF TORTS § 901 (1979). As a matter of basic policy, accountability, compensation, and deterrence of wrongful conduct should trump protecting lawyers from lawsuits. See generally Meredith J. Duncan, Criminal Malpractice: A Lawyer's Holiday, 37 GA. L.REV. 1251 (2003) (advocating greater use of malpractice to police quality of criminal defense).
¶ 32 Second, while it may be true that a majority of courts that have reached the issue require the plaintiff to establish actual innocence, the numbers do not appear to be great. Only Missouri, New York, Massachusetts, Alaska, Pennsylvania, California, New Hampshire, Nebraska, Illinois, Florida, and Wisconsin require either proof of actual innocence or that the conviction was set aside on postconviction relief. See majority at 8 n. 4. This is hardly a national consensus.
¶ 33 This court should protect the public from lawyers' misdeeds, not the other way around. A plaintiff who is not categorically innocent seeking compensation under ordinary principles of tort law faces no light burden. Such a guilty plaintiff must prove a duty, a breach of that duty, injuries proximately caused by the breach, and the amount *646 of his damages. I see no reason to provide additional protections for lawyers.
¶ 34 I would reverse.
NOTES
[1] The phrase "criminal malpractice" has been widely adopted to denote "legal malpractice in the course of defending a client accused of crime." Otto M. Kaus & Ronald E. Mallen, The Misguiding Hand of Counsel  Reflections on "Criminal Malpractice," 21 UCLA L.REV. 1191, 1191 n. 2 (1974).
[2] Jury Instruction 12, Br. of Appellants, App. 3 (emphasis added). The jury instructions were not included among the clerk's papers.
[3] A number of jurisdictions "have imposed appellate, post conviction, or habeas relief, dependent upon attorney error, as a predicate to recovery in a criminal malpractice action, when the claim is based on an alleged deficiency for which appellate, post conviction, or habeas relief would be available." Berringer v. Steele, 133 Md.App. 442, 758 A.2d 574, 597 (2000). See, e.g., Shaw v. State, 816 P.2d 1358, 1360 (Alaska 1991) (Shaw I); Stevens v. Bispham, 316 Or. 221, 851 P.2d 556, 566 (1993); Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); Morgano v. Smith, 110 Nev. 1025, 879 P.2d 735, 737 (1994); Peeler v. Hughes Luce, 38 Tex. Sup.Ct. J. 1117, 909 S.W.2d 494, 495 (1995); Adkins v. Dixon, 253 Va. 275, 482 S.E.2d 797, 801 (1997); Steele v. Kehoe, 24 Fla. L. Weekly S237, 747 So.2d 931, 933 (1999); Coscia v. McKenna Cuneo, 25 Cal.4th 1194, 108 Cal.Rptr.2d 471, 25 P.3d 670, 674-75 (2001); Canaan v. Bartee, 276 Kan. 116, 72 P.3d 911, 916-21, cert. denied, 540 U.S. 1090, 124 S.Ct. 962, 157 L.Ed.2d 795 (2003).
[4] Falkner, 108 Wash.App. at 123, 29 P.3d 771 (emphasis added). Many jurisdictions have imposed an actual innocence requirement. See, e.g., State ex rel. O'Blennis v. Adolf, 691 S.W.2d 498, 503 (Mo.App.1985); Carmel v. Lunney, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126, 1128 (1987); Glenn v. Aiken, 409 Mass. 699, 569 N.E.2d 783, 785-88 (1991); Shaw II, 861 P.2d at 572; Bailey v. Tucker, 533 Pa. 237, 621 A.2d 108, 113 (1993); Wiley, 79 Cal.Rptr.2d 672, 966 P.2d at 991; Mahoney v. Shaheen, Cappiello, Stein Gordon, P.A., 143 N.H. 491, 727 A.2d 996, 998-99 (1999); Rodriguez v. Nielsen, 259 Neb. 264, 609 N.W.2d 368, 374-75 (2000); Griffin v. Goldenhersh, 323 Ill.App.3d 398, 257 Ill.Dec. 52, 752 N.E.2d 1232, 1238 (2001); Schreiber v. Rowe, 27 Fla. L. Weekly S248, 814 So.2d 396, 399 (2002); Hicks v. Nunnery, 253 Wis.2d 721, 643 N.W.2d 809, 823 (2002).
[1] Other jurisdictions have not added new elements to claims of criminal malpractice. See, e.g., Mylar v. Wilkinson, 435 So.2d 1237 (Ala.1983); Silvers v. Brodeur, 682 N.E.2d 811 (Ind.Ct.App.1997); Gebhardt v. O'Rourke, 444 Mich. 535, 510 N.W.2d 900 (1994); Duncan v. Campbell, 123 N.M. 181, 936 P.2d 863 (Ct.App.1997); Krahn v. Kinney, 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989).