ZAGER, Justice
(dissenting).
■ I respectfully dissent. For the reasons stated below, I would affirm the summary judgment ruling of the district court and join the majority of states in adopting the “actual innocence” requirement for a criminal defendant to pursue a criminal malpractice claim.
The majority has done a thorough analysis of the dozen or more jurisdictions that have considered and adopted the actual innocence requirement, in criminal malpractice claims. . See Wiley v. County of San Diego, 19 Cal.4th 532, 79 Cal.Rptr.2d 672, 966 P.2d 983, 991 (1998);'Schreiber v, Rowe, 814 ,So.2d 396, 399-400. (Fla.2002) (per curiam); Glenn v. Aiken, 409 Mass. 699, 569 N.E,2d 783, 787-88 (1991); Rodriguez v. Nielsen, 259 Neb. 264, 609 N.W.2d 368, 374-75 (2000); Morgano v. Smith, 110 Nev. 1025, 879 P.2d 735, 738 (1994); Mahoney v. Shaheen, Cappiello, Stein & Gordon, PA., 143 N.H, 491, 727 A.2d 996, 999-1000 (1999); Carmel v. Lunney, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126, 1128 (1987); Ang v. Martin, 154 Wash.2d 477, 114 P.3d 637, 642 (2005); Humphries v. Detch, 227 W.Va. 627, 712 S.E.2d 795, 801 (2011). The majority also did’ a thorough analysis of alternative approaches to the actual innocence requirement in other jurisdictions, so I will not repeat ’ them here. While the majority does not find the justifications utilized by the above jurisdictions persuasive, whether based on- policy considerations or not, I do find them persuasive. We only need to look at the facts of this case to demonstrate- that a Clear, common sense approach requiring a prerequisite of actual innocence is the appropriate approach.
Barker was initially charged with several offenses, including attempted enticement of'a minor, an aggravated misdemeanor. " Through plea' negotiations, the court granted the State’s request to amend the trial information to an offense that was later determined to not be a recognizable *169 crime. Barker pleaded guilty to the crime and was sentenced to prison in December 2006.. The prison sentence was suspended. After less than two years of unsuccessful supervised probation, Barker’s probation was revoked on October 30, 2008. Barker filed an application for postconviction relief on October 1, 2009, for the first time raising an ineffective-assistanee-of-counsel claim because there was no factual basis for his guilty plea to solicitation of a minor to engage in a sex act. In a written ruling, the district court granted the application on February 28, 2011, properly ruling that counsel had been ineffective for allowing Barker to plead guilty to a crime that did not exist. The court vacated the conviction and sentence.
It is at this point that the actual innocence requirement may have its greatest impact on our analysis. Postconviction relief returns the ease to the district court for further proceedings. Once there, it is left to the unbridled discretion of the county attorney whether to pursue the original charges, or any charges. In this case, the county attorney apparently made the determination not to continue with the prosecution of Barker. There are a multitude of reasons why a county attorney may choose not to further prosecute a defendant. It is not up to us to second guess those reasons. However, Barker does not dispute that his conduct was the crime of attempted enticement of a child in violation of Iowa Code - section 710.10(3), an aggravated misdemeanor, the first count charged in the original trial information.' See Iowa Code § 710.10(3) (2005). Clearly under the actual innocence requirement employed by the majority of jurisdictions, a plea to the charge would eliminate any cause of action for criminal malpractice, as I think it properly should. In my opinion, an admission by the malpractice claimant of actual guilt to a crime should also eliminate any claim for criminal malpractice. Whether there is a conviction for a criminal offense Qr an acknowledgement of guilt by the defendant, this is a logical basis to preclude a claim for criminal malpractice.
' This brings us to an analysis of the concept of exoneration. The majority cites with approval the recent Kansas Supreme Court case of Mashaney v. Board of Indigents’ Defense Services, 302 Kan. 625, 355 P.3d 667 (2015). In that case, the court noted that" in a prior decision it had adopted the “exoneration rule” under which the defendant had to obtain relief from his or her conviction before bringing a criminal malpractice claim. Id. at 673-74 (discussing Canaan v. Bartee, 276 Kan. 116, 72 P.3d 911 (2003)). As noted by the majority, the Kansas approach mirrors that taken by the-Restatement of the Law Governing Lawyers. - Compare id. at 681-87, with Restatement (Third) of the Law Governing Lawyers § 53, at 389 (Am. Law Inst.2000). With regard to criminal malpractice claims, the Restatement concludes that “it is not necessary to prove that the convicted defendant was in fact innocent,” though it notes that “most jurisdictions addressing the issue have stricter rules.” Restatement § ⅜3 cmt. d, at 392. The Restatement adds, “As required by most jurisdictions addressing the issue, a convicted defendant seeking damages for malpractice causing a conviction must have had- that conviction set aside when process for' that relief on the grounds asserted in the malpractice action is available.” Id, As noted by the majority, this is the approach taken by the Iowa legislature with respect to court-appointed counsel. See Iowa Code § 815.10(6). However, there are two problems with reliance on this .Code section. First, we need to have an approach which addresses all criminal malpractice claims, not just those against court-appointed counsel. Second, even the statute itself requires that the “ineffective assis *170 tance of counsel is the proximate cause of the damage.” Id. (emphasis added). The issue of proximate cause will be discussed later in this dissent. While I acknowledge that we often look to the Restatement for guidance, we should only rely on the Restatement to the extent we are persuaded that it is correct. I do not find the approach taken by the Restatement and like-minded jurisdictions to be persuasive.
The Kansas court believed that this exoneration requirement effectively precluded the bringing of frivolous malpractice claims by criminal defendants. Mashaney, 355 P.3d at 685. Similarly, the majority concludes that the exoneration rule serves as an important screen against unwarranted claims and “preserves key principles of judicial economy and comity.” Trobaugh v. Sondag, 668 N.W.2d 577, 583 (Iowa 2003). While I agree it is an important screen, I .do not think it goes far enough. The purpose, of postconviction relief is not to determine whether a convicted defendant is actually innocent, but rather whether that person is - not legally, guilty. Postconviction relief exists to provide. relief for defendants, irrespective of their actual innocence. That is to say, I agree that postconviction relief is a necessary, but not sufficient, prerequisite for raising a criminal malpractice claim. As will be discussed, actual innocence is necessary to establish an unbroken causal nexus between the criminal defense counsel’s alleged.malpractice and the harm suffered.
In advocating for the adoption of’the actual innocence requirement, a causation analysis needs to be part of the review of any potential'criminal malpractice action. However, this analysis and screening is more appropriately conducted prior to trial, either through a motion to dismiss the claim or through a motion for summary judgment as was attempted here. The majority properly sets forth what a party must show to establish a prima facie claim of legal malpractice. The third element is that the attorney’s breach was the proximate cause of injury to the client. Ruden v. Jenk, 543 N.W.2d 605, 610 (Iowa 1996). As noted by the Washington Supreme Court:
The fourth element, proximate causation, includes “[clause in fact and legal causation.” Cause in fact, or “but for” causation refers to “the physical connection between an act and an injury.”' In a legal malpractice trial, the “trier of fact will be asked to decide what a reasonable jury or fact finder [in the underlying trial or ‘trial within a trial’] would' have done but for the attorney’s negligence.” Legal causation, however, presents a question of law: “It involves a determination of whether liability should attach as a matter of law given the existence of cause in fact.” To determine whether the cause in fact of a plaintiffs harm should also be deemed the legal cause of that harm, a court may consider, among other things, the public policy implications of holding the defendant liable.
Ang, 114 P.3d at 640 (quoting Hartley v. State, 103 Wash.2d 768, 698 P.2d 77, 82-83 (1985); Daugert v. Pappas, 104 Wash.2d 254, 704 P.2d 600, 603 (1985) (emphasis added)).,
I agree with the position articulated by the-Washington Supreme Court that the need to establish actual innocence, not simply legal innocence, is essential to proving proximate causation — both cause in fact and legal causation. Id. In Ang, the plaintiffs claimed that-legal causation or innocence was established by a not guilty verdict in a criminal prosecution. Id. at. 641. In our case, according to the majority, legal causation is established by the finding of ineffective assistance of counsel in a *171 posteonviction action. I do not believe that legal causation can be established under either circumstance absent actual innocence. Since I believe that legal causation is a matter of law that can be determined by the district court, and that this can only be established by actual innocence, the district court was correct in granting summary judgment to the defendants.
The Washington Supreme Court also included within its proximate cause analysis a consideration of public policy in support of requiring actual innocence:
Unless criminal malpractice plaintiffs can prove by a preponderance of the evidence their actual innocence of the charges, their own bad acts, not the alleged negligence of defense counsel, should be regarded as the cause in fact of their harm. Likewise, if criminal malpractice plaintiffs cannot prove their actual innocence under the civil standard, they will be unable to establish, in light of significant.public policy considerations, that the alleged negligence of their defense counsel was the legal cause of their harm. Summarizing the policy concerns, the Falkner court observed that, “[Requiring a defendant to prove by a preponderance of the evidence that he is innocent of the charges against him will prohibit criminals from benefitting from their own bad acts, maintain respect for our criminal justice system[’]s procedural protections, remove ■ the harmful chilling effect on the defense bar, prevent suits from criminals who may be guilty, [but] could have gotten a better deal, and prevent a flood of nuisance litigation.”
Id. at 642 (quoting Falkner v. Foshaug, 108 Wash.App. 113, 29 P.3d 771, 776 (2001) (footnote • omitted)). These are all sound policy reasons which support adopting an actual innocence requirement.
On a.final note, the majority gives inadequate weight to the significant policy reasons for requiring proof of actual innocence as an additional prerequisite for a prima facie criminal malpractice case. See Cort Thqmas, Note, .Criminal Malpractice: Raiding the Chutes and Using the Ladders, .37 Am. J. Crim. L. 331, 346-46 (2010) [hereinafter Thomas] (outlining the various public policy reasons that courts have found persuasive when adopting an actual innocence requirement). New York has adopted the ¡actual innocence requirement in criminal malpractice, cases where a defendant is seeking pecuniary damages. See Dombrowski v. Bulson, 19 N.Y.3d 347, 948 N.Y.S.2d 208, 971 N.E.2d 338, 340-41 (2012); Carmel, 518 N.Y.S.2d 605, 611 N.E.2d at 1128. In a more specific case, when New York’s highest court was faced with a criminal malpractice case where the defendant was also seeking nonpecuniary damages, the court recognized that expanding criminal malpractice. liability would restrict access to justice, stating that:
Allowing this type of recovery would have, at best, negative and, at worst, devastating consequences for the criminal justice system. Most significantly, such a ruling could have a chilling effect on the willingness of the already strapped defense bar to represent indigent accused. Further, it would put attorneys.in the position of having an incentive not to participate in post-conviction efforts to overturn wrongful convictions.
Dombrowski, 948 N.Y.S.2d . 208, 971 N.E.2d at 340-41. The same rationale extends to the situation before us, because the approach adopted by the majority places an ¡unnecessary burden on the defense bar. ■ I also note that, in this case, the majority has not applied -any limiting language that would restrict criminal mal *172 practice liability to only pecuniary damages.
The' need to attract competent criminal defense attorneys is great. “The public'has a strong interest in encouraging the representation of criminal defendants, particularly those who are ruled to be indigent.” Glenn, 569 N.E.2d at 788.' Establishing an actual innocence requirement “helps to encourage that kind of legal representation by reducing ■ the' risk that malpractice claims will be asserted and; if-asserted, will be successful.” Id. This is particularly true today, when more than eighty percent of all criminal defendants in this country are represented by court-appointed counsel, under the burden of increasing caseloads arid shrinking budgets. Petér A; Joy, Ensuring the Ethical Representation of Clients in the Face of Excessive Caseloads, 75 Mo. L. Rev. 771, 774 (2010). While certainly not an excuse, I believe any attorney with a substantial criminal defense practice will be subject to a’significant increase in vexatious litigatipn with its corresponding expense, absent some logical gate-keeping function — which the actual innocence requirement provides.
This can be easily accomplished and is not a drastic change in our tort law.' It simply requires that a plaintiff plead actual innocence as a prerequisite to the commencement of a criminal malpractice action. 'The true' victims of criminal malpractice, who may be entitled to relief, will become 'obvious. It makes no sense to simply allow all exonerated defendants, for whatever reason, to be entitled to file a criminal malpractice action, perform discovery, proceed to trial; and then expect the jury to decide whether the acts of the attorney were the proximate cause of damage to the defendant. This is an unnecessary expense to all parties concerned and a waste of judicial resources. See Thomas, 37 Am. J. Crim. L. at 346 (noting that one pervasive public policy concern is flooding courts with unnecessary cases), The clear and rational solution is to adopt an actual innocence requirement, as a majority of jurisdictions have done. Then, the courts can evaluate the pleadings, review the factual basis of the claim, allow claims with merit to proceed, and dispose of meritless claims. This is what our court system is designed to do and is fair and reasonable to all parties involved.'
For the above reasons, I believe ¾ rear sonable threshold showing of actual innocence should be a prerequisite to bringing a criminal malpractice claim, ás adopted by the majority of jurisdictions. Plaintiffs would then be allowed to utilize our traditional tort rules in the processing of their claims. Since the plaintiff in' this action could not meet this reasonable threshold of actual innocence, I would affirm the summary judgment entered by ‘ the district court.
'WATERMAN, J., joins'this dissent.