# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOHN FREDRICK FLYNN, III, | No. 53703-6-II |
| Appellant, | |
| v. | |
| PIERCE COUNTY, | PUBLISHED IN PART OPINION |
| Respondent, | |
| CHARLES BONET, LORI KENNEDY, and PATRICIA PETHICK, | |
| Defendants. | |

CRUSER, J. – Following the State's error in calculating his offender score and his defense counsel's failure to contest the State's calculation, John Frederick Flynn, III spent approximately 31 months incarcerated beyond the high end of his correct standard range sentence. After Flynn's resentencing and subsequent release, Flynn filed a lawsuit against Pierce County, his trial criminal defense counsel Charles Bonet, the deputy prosecuting attorney,[1] and his appellate counsel (collectively "the County"). The trial court entered an order dismissing Flynn's claim pursuant to CR 12(b)(6). Flynn appeals, arguing that his complaint was timely filed and that he alleged a set

---

[1] Flynn's claims against the deputy prosecuting attorney were for false imprisonment and for a violation of his rights under the Eighth Amendment to the United States Constitution raised under § 1983. Those claims were dismissed, and Flynn does not seek review of the dismissal.

of facts in his complaint pertaining to criminal malpractice that would justify recovery. Specifically, he asserts that the harm he suffered was caused by his attorneys' negligence, and the original sentencing court's adoption of an erroneous offender score was not a superseding, intervening event and thus did not absolve the county or its agents of liability.[2]

In the published portion of this opinion, we hold that Flynn's claim is not barred by the statute of limitations. In the unpublished portion of this opinion, we hold that Flynn cannot establish causation as to his negligence claim because the original sentencing court's adoption of an incorrect offender score, despite its being advised of the correct offender score by the Department of Corrections (DOC), was a superseding, intervening event that absolved the County and its agents of liability. Because no set of facts exist that would justify recovery, we hold that Flynn's claim was properly dismissed pursuant to CR 12(b)(6).

Accordingly, we affirm.

FACTS

Flynn was convicted of one count of first degree rape and one count of first degree burglary in a jury trial on March 3, 1994. He came before the superior court for sentencing on May 17, 1994. The Department of Corrections (DOC) reviewed Flynn's criminal history prior to sentencing, and in its Presentence Investigation Report (PSI), it determined that Flynn's offender score for the rape conviction was eight and that his offender score for the burglary conviction was seven. Based on these offender scores, the PSI listed the standard range sentence as 185 to 245

---

[2] Flynn additionally argues that the original sentencing court acted outside its authority in sentencing him beyond the standard range, but we do not reach this argument because Flynn fails to state a claim under CR 12(b)(6) on other grounds.

months confinement for the rape conviction and 67 to 89 months confinement for the burglary conviction. Both convictions carried a statutory maximum sentence of life imprisonment.

The State's offender score calculation differed from DOC's, assigning to Flynn an offender score of 13 for the rape conviction and 12 for the burglary conviction. For an offender score above 9 for the rape conviction, the standard range sentence was 210 to 280 months confinement, and for an offender score above 9 for the burglary conviction, the standard range was 87 to 116 months. In the PSI, DOC specifically noted that its offender score calculation differed from the State's. According to the facts averred in Flynn's complaint, DOC set forth the basis for its offender score calculation by listing the convictions and current offenses upon which it relied for its calculation.

Defense counsel appears to have not filed a sentencing memorandum, and he did not otherwise contest the State's calculation of Flynn's offender score during the sentencing hearing.[3] The original sentencing court adopted the State's offender score calculation and sentenced Flynn to the high end of the standard range. Flynn was thus sentenced to 280 months confinement on the rape conviction and 116 months confinement on the burglary conviction, with the sentences to run concurrently. The original sentencing court gave Flynn credit for the 201 days he had already served.

Flynn appealed his convictions and filed a pro se personal restraint petition (PRP) that we consolidated with his direct appeal. Appellate counsel did not assign error to the State's offender score calculation in Flynn's direct appeal, and Flynn did not raise the issue in his PRP. We affirmed

---

[3] The record does not contain a transcript of this hearing, and Flynn made this allegation in his complaint "[o]n information and belief." Clerk's Papers (CP) at 8. Because Flynn appeals a CR 12(b)(6) dismissal, we consider all facts alleged in the complaint as true. *Woodward v. Taylor*, 184 Wn.2d 911, 917, 366 P.3d 432 (2016).

Flynn's convictions and dismissed his PRP. *State v. Flynn*, No. 18237-8-II (Wash. Ct. App. Aug. 23, 1996). The mandate issued on January 23, 1997.

In the years that followed, Flynn filed several additional PRPs, with one petition proving successful. On July 1, 2016, the supreme court granted Flynn's request for collateral relief, agreeing that the original sentencing court erroneously calculated his offender score. Clerk's Papers (CP) at 126-27 (Order, *In re Pers. Restraint of Flynn*, No. 92411-2 (Wash. July 1, 2016)). The State conceded that in calculating Flynn's offender score, it included "some convictions for crimes evidently committed by someone else," and in other instances, "the history misidentified the crimes of conviction." *Id.* at 126.

The supreme court ruled that the correct calculation of Flynn's offender score for the rape conviction depended on the resolution of whether Flynn was under community supervision at the time he committed the crime. The supreme court remanded for resentencing and instructed the State to provide the sentencing court with the necessary documentation to prove Flynn's offender score and to allow the sentencing court to determine whether Flynn was under community supervision when he committed the crimes.

On remand, the sentencing court recalculated Flynn's offender score consistent with the scores in DOC's PSI. Consequently, the sentencing court determined that based on Flynn's offender score of 7 for the burglary conviction, the corresponding standard range sentence was 67 to 89 months confinement. On the rape conviction, the sentencing court determined that Flynn's offender score was 8 and his standard range sentence was 185 to 245 months. The sentencing court sentenced Flynn to a total of 240 months confinement and acknowledged that Flynn had already served 275 months and 26 days. A new judgment and sentence was entered on October 24, 2016,

and Flynn was released the following day. At the time of his release, Flynn had been incarcerated for more than two and a half years longer than allowed by the correct standard range.

Flynn filed a complaint against the County in King County Superior Court on October 22, 2018. Flynn's complaint alleged that the County was liable for the injuries he suffered due to his overlong incarceration and that he was entitled to relief based on negligence, false imprisonment, and a violation of his rights under the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C § 1983.

The County removed the case to federal court where Flynn voluntarily dismissed his § 1983 claims following Pierce's County's motion to dismiss. The federal court declined to exercise its supplemental jurisdiction over Flynn's remaining state law claims and remanded the matter to King County Superior Court. By stipulated agreement, the parties changed the venue to Pierce County.

Thereafter, the County moved to dismiss Flynn's remaining claims of negligence and false imprisonment under CR 12(b)(6), arguing that Flynn's negligence claims failed because he did not set forth a set of facts that would establish causation and that both claims should be dismissed because the complaint was filed well after the applicable statute of limitations expired. Flynn responded that his claim alleged sufficient facts to establish causation and that his cause of action did not accrue until his resentencing, rendering his complaint timely. Flynn abandoned his false imprisonment claim by the time he responded to the County's motion.

The trial court agreed with the County and dismissed Flynn's claims. Flynn appeals.

DISCUSSION

STATUTE OF LIMITATIONS

Flynn contends that his cause of action for criminal legal malpractice did not accrue until his sentence was invalidated and his new sentence was imposed. Thus, he alleges that his claim was timely because it was filed within three years of his post-conviction relief. We agree that Flynn's claim for legal malpractice was timely filed.

A. LEGAL PRINCIPLES

The applicable statute of limitations for a legal malpractice claim is three years. *Cawdrey v. Hanson Baker Ludlow Drumheller, P.S.*, 129 Wn. App. 810, 816, 120 P.3d 605 (2005). "Statutes of limitations do not begin to run until a cause of action accrues," which is usually "when the party has the right to apply to a court for relief." *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575, 146 P.3d 423 (2006).

Under the discovery rule, a cause of action accrues "when the plaintiff discovers, or in the reasonable exercise of diligence should discover, the elements of the cause of action." *Id.* at 575-76. The time of discovery is the point at which the plaintiff "discovers the salient facts underlying the elements of the cause of action," not when the plaintiff realizes that these facts give rise to a legal claim. *Id.* at 576.

In *Heck v. Humphrey*, 512 U.S. 477, 490, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the United States Supreme Court held that a § 1983 cause of action "does not accrue until the conviction or sentence has been invalidated." The Court explained,

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of

his conviction or confinement, just as it has always applied to actions for malicious prosecution.

We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id*. at 486-87 (footnotes omitted).

B. APPLICATION

Flynn's negligence claim is based on an allegation of legal malpractice in a criminal case, which requires the plaintiff to have obtained postconviction relief "as a prerequisite" to establishing proximate causation, a necessary element. *Piris v. Kitching*, 185 Wn.2d 856, 862, 375 P.3d 627 (2016). The public policy rationale supporting this requirement stems from the idea that it is "'inappropriate to treat victims of alleged negligence by defense counsel as having been "harmed," for the purpose of maintaining a legal malpractice action . . . unless they show that their counsel failed to meet the established standards in a way that would make postconviction relief appropriate.'" *Falkner v. Foshaug*, 108 Wn. App. 113, 118, 29 P.3d 771 (2001) (imposing, for the first time, the requirement that a plaintiff alleging legal malpractice in a criminal case demonstrate a successful post-conviction challenge) (alteration in original) (quoting *Stevens v. Bispham*, 316 Or. 221, 851 P.2d 556, 562 (1993)).

Applying the principles set forth in *Piris* and *Heck*, Flynn could not have brought this action until he obtained post-conviction relief from his sentence because he was not able to litigate the validity of his sentence in a civil tort claim. Stated another way, Flynn could not prove a claim

for legal malpractice in a criminal case predicated on an allegation that his counsel failed to challenge an incorrect offender score calculation while still serving an ostensibly valid sentence based on that score. *See Heck*, 512 U.S. at 486-87. Resolving Flynn's legal malpractice claim would necessarily require the civil court to decide whether his sentence was unlawful.

Further, Flynn could not have applied to a court for relief until his sentence had been invalidated because post-conviction relief is a prerequisite to establishing proximate cause for a legal malpractice claim in a criminal case. *See Piris*, 185 Wn.2d at 862. In that same vein, Flynn could not have been aware of all "salient facts" pertaining to his claim until his sentence was invalidated. *See 1000 Virginia Ltd. P'ship*, 158 Wn.2d at 576.

The County argues that under the discovery rule, Flynn's cause of action accrued when he was initially sentenced and that the rule articulated in *Heck* does not apply here because that rule pertains only to unlawful convictions rather than unlawful sentences. These arguments are not well taken. First, as explained above, even if Flynn knew he was incorrectly sentenced based on an improperly calculated offender score at his initial sentencing hearing, he could not have brought his legal malpractice claim until he obtained postconviction relief. *See Piris*, 185 Wn.2d at 862; *see also 1000 Virginia Ltd. P'ship*, 158 Wn.2d at 576. Second, the Court in *Heck* did not limit the accrual rule to civil tort suits that would challenge the validity of an underlying conviction; instead, it also expressly referred to challenges to the validity of a sentence. 512 U.S. at 486-87. The County's contention that exoneration is not the same as a challenge to sentence length is thus an unavailing distinction.

We agree with Flynn that his cause of action did not accrue until he obtained post-conviction relief through resentencing. Therefore, his claim was timely commenced.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Unpublished text follows.

CAUSATION

Flynn contends that the trial court erred in dismissing his negligence claim under CR 12(b)(6) because his complaint set forth facts which, if proven, would entitle him to recovery. The County asserts that the trial court properly dismissed Flynn's claim because Flynn cannot prove that the County was the cause in fact of Flynn's injuries when the original sentencing court's order was a superseding and intervening event.

We agree with the County.

A. STANDARD OF REVIEW

Under CR 12(b)(6) a trial court may dismiss a complaint that fails to "state a claim upon which relief can be granted." Dismissal on this basis is appropriate where "'the court concludes, beyond a reasonable doubt, the plaintiff cannot prove any set of facts which would justify recovery.'" *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014) (internal quotation marks omitted) (quoting *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007)). We review a dismissal under CR 12(b)(6) de novo. *Id.*

When determining whether dismissal is appropriate, "[a]ll facts alleged in the complaint are taken as true, and we may consider hypothetical facts supporting the plaintiff's claim." *Id.* A complaint cannot be dismissed if "'*any* set of facts could exist that would justify recovery.'" *Id.* at 963 (quoting *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988)). Therefore, a CR 12(b)(6)

motion should be granted "'sparingly and with care' and, as a practical matter, 'only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" *Kinney*, 159 Wn.2d at 842 (internal quotation marks omitted) (quoting *Hoffer*, 110 Wn.2d at 420)

### B. LEGAL PRINCIPLES

Flynn's negligence claim arises under a theory of legal malpractice. To establish a claim of legal malpractice, the plaintiff has the burden of showing,

> (1) [t]he existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.

*Piris*, 185 Wn.2d at 861 (alteration in original) (quoting *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). Proximate causation contains two elements: cause in fact and legal causation. *Ang v. Martin*, 154 Wn.2d 477, 482, 114 P.3d 637 (2005).

Cause in fact, also described as "'but for'" causation, "refers to 'the physical connection between an act and an injury.'" *Id.* (quoting *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)). A defendant is liable for a negligent action if that action, "unbroken by any new independent cause," is responsible for the harm alleged. *Schooley v. Pinch's Deli Market Inc.*, 134 Wn.2d 468, 482, 951 P.2d 749 (1998). But an intervening event will sever the chain of causation and absolve the defendant of liability only where it is "so unexpected that it falls outside the realm of the reasonably foreseeable." *Davis v. Baugh Indus. Contractors, Inc.*, 159 Wn.2d 413, 418, 150 P.3d 545 (2007). An exception to this general rule, applied with most frequency in the negligent supervision context, exists where court intervention is identified as the potential superseding and intervening cause of an alleged injury. *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 86,

1 P.3d 1148 (2000). Where a judicial determination is involved, it will act as a superseding, intervening event "if all material information has been presented to the court and reasonable minds could not differ as to this question." *Id*. at 88.

C. APPLICATION

Flynn contends that he has shown a set of facts which would justify recovery under CR 12(b)(6), and that the trial court erred in dismissing his negligence claim on this basis. Focusing on foreseeability, Flynn asserts that the original sentencing court's acceptance of the State's incorrect offender score calculation was a foreseeable harm and thus not a superseding cause that would absolve the County of liability for the harm he suffered. In addition, Flynn contends that the original sentencing court did not have all material information because his counsel did not challenge the State's offender score calculation.

However, Flynn acknowledged in his complaint both that the PSI contained the correct offender score and that the PSI specifically alerted the sentencing court to the fact that its calculation differed from the State's. Further, Flynn's complaint notes that DOC set forth Flynn's criminal history in the PSI to explain the basis of its calculation.

Flynn does not dispute that the sentencing court knew of the discrepancy between the two offender score calculations. Rather, Flynn contends that because *his counsel* did not alert the court to the discrepancy, and because "the PSI being present is not enough," material information was withheld. Reply Br. of Appellant at 7. There is no logic to Flynn's suggested distinction.

When considering whether a judicial determination severed the causal chain, the dispositive issue is the materiality of the withheld information. *Tyner*, 141 Wn.2d at 87. The identity of the party who ultimately provides the material information is of no consequence

because the court is able to make a fully informed and independent decision regardless of the presenter. Moreover, Flynn provides no support for his assertion that the information must be presented by any particular individual or party to qualify as "material" in this context. We may therefore assume that no such supporting authority exists. *See State v. Arredondo*, 188 Wn.2d 244, 262, 394 P.3d 348 (2017) (citing *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978)).

Because the original sentencing court was presented with the correct calculation of Flynn's offender score by DOC, along with the reasoning supporting that calculation as set forth in the PSI, and it opted to adopt the erroneous calculation proffered by the State, Flynn's erroneous sentence was the product of independent judgment by the court. The original sentencing court's decision, therefore, constituted an intervening and superseding cause of Flynn's harm. *See Tyner*, 141 Wn.2d at 88.[4] Thus, the trial court did not err in granting the County's motion to dismiss.

## ATTORNEY FEES

Flynn requests attorney fees on appeal, citing only RAP 14.3, which lists the type of costs that are recoverable. But only a substantially prevailing party is entitled to costs on appeal. RAP 14.2. Because Flynn does not substantially prevail, he is not entitled to recover costs or fees under RAP 14.3. *See* RAP 14.2.

## CONCLUSION

We hold that Flynn's complaint was timely filed. However, because the original sentencing court's sentencing order was an intervening, superseding cause of Flynn's erroneous sentence,

---

[4] Because we resolve the cause in fact element in the County's favor, we need not reach the legal causation element. See *Ang*, 154 Wn.2d at 482.

No. 53703-6-II

Flynn failed to demonstrate any set of facts that would support recovery. Flynn's complaint was thus properly dismissed under CR 12(b)(6).

Accordingly, we affirm.

CRUSER, J.

We concur:

SUTTON, A.C.J.

GLASGOW, J.