FILED
COURT OF APPEALS D
STATE OF WASHING

2015 MAR -9 A 10: 30



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CHRISTOPHER PIRIS, | ) | NO. 71054-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ALFRED KITCHING and JANE DOE | ) | PUBLISHED OPINION |
| KITCHING, husband and wife and their | ) | |
| marital community; SOCIETY OF | ) | FILED: March 9, 2015 |
| COUNSEL REPRESENTING | ) | |
| ACCUSED PERSONS (SCRAP); | ) | |
| ERIC NIELSEN and JANE DOE | ) | |
| NIELSEN, husband and wife and their | ) | |
| marital community; NIELSEN, | ) | |
| BROMAN & KOCH P.L.L.C.; and | ) | |
| KING COUNTY, | ) | |
| Respondents. | ) | |
| | ) | |

LAU, J. — Christopher Piris appeals the trial court's dismissal on summary judgment of his legal malpractice suit against his former attorneys and King County arising from his underlying criminal case. Piris contends the trial court erred when it determined that he failed to allege and prove his innocence of first degree rape of a child, a necessary requirement to maintain his legal malpractice lawsuit. We conclude that Piris's negligence allegations fall outside the narrow exception to the innocence

requirement we recognized in <u>Powell v. Associated Counsel for Accused</u>, 125 Wn. App. 773, 106 P.3d 271 (2005) (<u>Powell</u> I), and <u>Powell v. Associated Counsel for Accused</u>, 131 Wn. App. 810, 129 P.3d 831 (2006) (<u>Powell</u> II). We affirm summary judgment dismissing as a matter of law Piris's legal malpractice claim.

FACTS

The material facts are not disputed. In 1997, the State charged Christopher Piris with three counts of first degree rape of a child based on crimes he committed when he was 13 years old. By the time he was charged with the offenses in Superior Court, Piris was 19 years old. Piris was represented at trial by attorney Alfred Kitching from the Society of Counsel Representing Accused Persons (SCRAP).[1]

On September 25, 1998, Piris pleaded guilty to two counts of first degree rape of a child. His statement of defendant on plea of guilty indicated a standard sentencing range for the crimes as 159 to 211 months of confinement.

At sentencing in May 1999, the trial court denied Piris's request for a 48-month exceptional sentence below the standard range. The court imposed a low-end sentence explaining:

> THE COURT: . . . Mr. Piris, I have considered these requests for exceptional sentence, and it's the conclusion of this court that there are not facts in this file that would support an exceptional sentence.
> There are certainly—this file represents a tragedy undoubtedly in your life and a tragedy in the lives of many of your family. Be that as it may, I just do not feel there are facts in this file that will support an exceptional sentence down. What I am going to do, however, is I am going to sentence you at the bottom of the standard range which is—Mr. Rogers, I hope I'm correct on this—is 159 months.

---

[1] Attorney Michael Frost associated with Kitching as co-counsel. Frost is not a party in this action.

Piris appealed the length of his sentence. Attorney Eric Nielsen, from Nielsen, Broman and Koch law firm was appointed to represent Piris on his appeal. Nielsen successfully argued on appeal that the standard range sentence of 159 to 211 months was erroneous because the trial court used the version of RCW 9.94A.360 in effect at the date of the sentencing hearing instead of the version in effect at the date the offenses were committed. This statute was amended in 1997, about two years before Piris was sentenced. Under the correct version of the statute, Piris's offender score calculation yielded an offender score of 6 rather than 7 and a standard range of 146 to 194 months rather than 159 to 211 months of confinement. Former RCW 9.94A.310 (1993).

In a February 14, 2000 per curiam opinion, we vacated Piris's sentence and remanded for resentencing based on the sentencing error. On the same day, the court clerk's office mailed a cover letter and a copy of the opinion to Nielsen and a prosecutor in the King County Prosecuting Attorney's Office. The cover letter was addressed to Eric Nielsen at Nielsen's then business address and to Gary Ernsdorff at the King County Prosecuting Attorney's Office. The same cover letter shows both the sentencing judge and Piris were copied in on the letter and opinion.[2] Piris was never resentenced.

In 2010, Piris was released from prison after serving his original sentence. In May 2012, he was summoned to King County Superior Court for a probation violation. While reviewing Piris's file, a superior court judge discovered that Piris had never been

---

[2] Piris's brief argues, "According to Piris, he never heard from Nielsen regarding the reversal." Appellant's Br. at 3. There is no citation to record facts.

resentenced.[3] The judge imposed a low-end sentence of 146 months, with credit for all time previously served. The record is silent as to the resentencing court's rationale for the sentence imposed.

Piris sued Kitching, Kitching's employer (SCRAP), Nielsen, and the Nielsen Broman & Koch law firm, alleging malpractice.[4] In a second amended complaint, Piris named King County as a defendant.

In September 2013, Nielsen moved to dismiss Piris's lawsuit on summary judgment, alleging that Piris "cannot prove, and does not assert, his actual innocence of the crimes of which he was convicted. Therefore, his claims of legal malpractice is barred under Washington law." King County and Kitching joined in the motion.

The trial court granted the summary judgment in favor of all the defendants. In its written order, the court reasoned, "The basis for the dismissal is the 'actual innocence' requirement as set out in Ang v. Martin, 154 Wn.2d 477[, 114 P.3d 63] (2005)." The court also denied Piris's subsequent reconsideration motion. Piris appealed.[5]

ANALYSIS

Piris maintains the trial court erred by applying the "actual innocence" requirement "in a case alleging malpractice at sentencing . . . ." Appellant's Br. at 1. He

---

[3] The original sentencing judge had since retired.

[4] We refer to Nielsen and his law firm as "Nielsen." We refer to Kitching and SCRAP as "Kitching."

[5] On August 21, 2014, Nielsen filed a motion to strike portions of Piris's reply brief.

argues, "A plaintiff in a legal malpractice action alleging sentencing errors only is not required to demonstrate 'actual innocence.'" Appellant's Reply Br. at 1. Piris does not contend he is innocent of the crimes for which he was convicted. He relies mainly on the narrow exception to the innocence requirement we adopted in Powell I and Powell II.

This court reviews de novo a trial court's decision to dismiss a complaint on summary judgment. Powell, 125 Wn. App. at 775. The parties agree that this issue should be decided as a matter of law. Legal issues are reviewed de novo. State v. Williams, 96 Wn.2d 215, 220, 634 P.2d 868 (1981).

In criminal malpractice[6] cases, proof of innocence is an indispensable element of a plaintiff's cause of action. In Falkner v. Foshaug, 108 Wn. App. 113, 29 P.3d 771 (2001), addressing an issue of first impression, we held that a plaintiff alleging legal malpractice occurring during representation in a criminal matter must establish postconviction relief and demonstrate his innocence by a preponderance of the evidence, in addition to the elements of a civil legal malpractice claim. The core dispute in this case involves the innocence element. Because Piris entered a knowing and voluntary guilty plea, he cannot allege his innocence in this civil malpractice action. Falkner, 108 Wn. App. at 120. The actual innocence requirement is one of two proximate cause requirements a malpractice plaintiff must establish. Ang v. Martin, 154

---

[6] "Criminal malpractice" refers to legal malpractice that occurs when an attorney defends a criminal defendant. Falkner, 108 Wn. App. at 118 n.6 (citing Otto M. Kraus & Ronald E. Mallen, The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice," 21 UCLA L. Rev. 1191, 1191 n.2 (1974)).

Wn.2d 477, 482, 114 P.3d 637 (2005). The other—postconviction relief—is not at issue here.

> The innocence requirement is based on compelling public policy considerations.
>
> Requiring a defendant to prove by a preponderance of the evidence that he is innocent of the charges against him will prohibit criminals from benefiting from their own bad acts, maintain respect for our criminal justice system's procedural protections, remove the harmful chilling effect on the defense bar, prevent suits from criminals who "may be guilty, [but] . . . could have gotten a better deal," and prevent a flood of nuisance litigation. These considerations all support our conclusion that postconviction relief is a prerequisite to maintaining the suit and proof of innocence is an additional element a criminal defendant/malpractice plaintiff must prove to prevail at trial in his legal malpractice action.

Falkner, 108 Wn. App. at 123-24 (footnotes omitted) (alteration in original).

In Owens v. Harrison, 120 Wn. App. 909, 86 P.3d 1266 (2004), Owens appealed a trial court order dismissing his malpractice lawsuit on summary judgment. He argued trial court error premised on requiring him to allege and prove he was innocent of the crime for which he was convicted as part of his criminal malpractice claim and the dismissal of his breach of contract claim. Owens argued that we should "carve out an exception to the innocence requirement where defense counsel fails to convey a plea offer and, as a result, the defendant receives an increased sentence." Owens, 120 Wn. App. at 914. We declined to carve out an exception citing our holding in Falkner. "Falkner requires a criminal malpractice plaintiff to establish actual innocence for public policy reasons, and we see no reason to depart from that holding here. Because Owens fails to allege or establish his innocence, the trial court properly granted summary judgment." Owens, 120 Wn. App. at 915 (footnote omitted).

In Ang, the Angs were indicted on 18 criminal counts related to social security fraud. The Angs initially rejected a plea offer from the State. After conferring with their

attorney, however, they accepted what they considered a less favorable deal before the government concluded its case. The Angs hired new counsel to review the plea. The new attorney determined the government had not met its burden of proof at trial and that there was no benefit to the plea agreement. The Angs then successfully moved to withdraw their pleas and were acquitted on all counts. Ang, 154 Wn.2d at 479-80.

The Angs sued their former attorneys for malpractice. Responding to two special verdict forms, the jury found that the Angs failed to prove by a preponderance of the evidence they were innocent of all the criminal charges. The Angs appealed. We affirmed. Citing Falkner, our Supreme Court held that a plaintiff bringing a malpractice action against a criminal defense attorney must establish his or her actual innocence of the underlying charge by a preponderance of the evidence. Related to the legal causation aspect of proximate causation, our supreme court explained:

> Legal causation . . . presents a question of law: "It involves a determination of whether liability should attach as a matter of law given the existence of cause in fact." To determine whether the cause in fact . . . should also be deemed the legal cause of [plaintiff's] harm, a court may consider, among other things, the public policy implications of holding the defendant liable.

Ang, 154 Wn.2d at 482 (citation omitted) (quoting Hartley v. State, 103 Wn.2d 768, 779, 698 P.2d 77 (1985)). Otherwise, the court wrote, the plaintiff's own bad acts should be considered the cause of the injury: "Unless criminal malpractice plaintiffs can prove by a preponderance of the evidence their actual innocence of the charges, their own bad acts, not the alleged negligence of defense counsel, should be regarded as the cause in fact of their harm." Ang, 154 Wn.2d at 485.

The court also cited with approval Falkner's public policy rationale supporting an actual innocence requirement: (1) prohibiting criminals from benefitting from their own

bad act, (2) maintaining respect for the criminal justice system, (3) removing the harmful chilling effect on the defense bar, (4) preventing suits from criminals who may be guilty but could have gotten a "'better deal,'" and (5) preventing a flood of nuisance litigation. Ang, 154 Wn.2d at 485 (quoting Falkner v. Foshaug, 108 Wn. App. at 123).

In two related cases, Powell I and Powell II, we considered whether plaintiff in a criminal malpractice action alleging a sentencing error against his defense attorney must prove by a preponderance of the evidence he was actually innocent of the crime. Powell I was decided while Ang was pending before the Supreme Court. Powell pleaded guilty to solicitation to deliver a material in lieu of a controlled substance, a gross misdemeanor with a maximum sentence of 12 months. Powell I, 125 Wn. App. at 774. But at sentencing, the trial court sentenced Powell for a class C felony to 38.25 months of confinement. After he discovered the error, he filed a personal restraint petition. Our Supreme Court granted the petition on the ground that the trial court acted outside its authority and remanded for resentencing. By the time he was released, Powell had served 20 months in prison. He sued his criminal defense attorney for legal malpractice and claimed damages for the time he served in prison beyond 12 months. Defendants responded with a CR 12(b)(6) motion to dismiss his lawsuit, arguing Falkner's actual innocence rule applied. The trial court agreed, granted the motion, and dismissed his lawsuit. Powell appealed. We reversed and remanded for reinstatement of Powell's criminal malpractice claim. We agreed with Powell that application of the actual innocence rule in his case was unfair. We compared Powell's situation to that of an innocent person wrongfully convicted:

Although we have no particular quarrel with the innocence requirement generally, we agree with Powell that its application in this case is unfair. And we observe that postconviction relief, in this instance, has not entirely provided Powell with what competent representation arguably should have afforded in the first instance. Powell has served substantially more time than the trial court was authorized to impose for a gross misdemeanor. We conclude that the blind application of the innocence requirement to the facts of this case would go beyond the public policy to be served by the innocence requirement.

The policy to be served is that regardless of the attorney's negligence, a guilty defendant's conviction and sentence are the direct result of his own perfidy, and no one should be permitted to take advantage of his own wrong. But "an innocent person wrongfully convicted due to inadequate representation has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss."

Powell's situation is closer to that of an innocent person wrongfully convicted than of a guilty person attempting to take advantage of his own wrongdoing. Powell has no quarrel with having been incarcerated for the period of time justified by the gross misdemeanor that he pleaded guilty to having committed. In sum, we decline to extend the innocence requirement to these facts, for to do so would not serve the public policy . . . .

Powell I, 125 Wn. App. at 777-78 (citations omitted) (quoting Wiley v. County of San Diego, 19 Cal. 4th 532, 539, 966 P.2d 983, 79 Cal. Rptr. 2d 672 (1998)).

Powell appealed. The Supreme Court remanded the case for reconsideration in light of Ang.[7] In Powell II, we adhered to our rationale in Powell I, noting that in Ang, our Supreme Court cited Falkner approvingly and concluded that a criminal malpractice plaintiff must prove actual innocence. Ang, 154 Wn.2d. at 486.

But neither Falkner nor Ang requires dismissal of Powell's complaint. In those cases, the plaintiffs' allegations of malpractice stemmed from the defendants' representation during the guilt or innocence phase of the plaintiffs' criminal trials. In contrast, Powell does not contest his guilt, and the allegations of malpractice stem entirely from his attorneys' failure to object to the court sentencing him to a

---

[7] Ang was pending before our Supreme Court when we decided Powel I. After deciding Ang, our Supreme Court granted Powell's petition for review and remanded for reconsideration.

much longer sentence than allowed by law. The justifications for requiring proof of actual innocence do not apply to Powell's case.

Powell, 131 Wn. App. at 813 (footnote omitted).

"Powell will not benefit from his own bad act. He paid for his crime by serving the maximum prison sentence that could be lawfully imposed. His unlawful restraint beyond that period was not a consequence of his own bad actions." Powell, 131 Wn. App. at 814.[8]

Piris analogizes his situation to Powell. He contends that as in Powell, the sentencing error was not the direct consequence of his own bad act. Instead, the error committed by his attorney resulted in the court's imposition of an unlawful sentence of 159 months, resulting in an additional 13 months served. He asserts, "Just as in Powell, the sentence exceeded the maximum that could lawfully be imposed." Appellant's Reply Br. at 4. Piris correctly quotes the rule that "a sentencing court acts without authority…when it imposes a sentence based on a miscalculated offender score." In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 868, 50 P.3d 618 (2002). But that rule is not helpful here in resolving the question of whether Powell's narrow exception applies in this case.

---

[8] Following our remand in Powell II, the defendants moved for summary judgment. They first argued that, under case law and a sentence doubling statute in effect at the time, Powell's offense was actually a class C felony. Second, they asserted that Powell could not establish that any negligence caused him damage. Finally, they argued that the malpractice action failed because it was not supported by any expert testimony establishing a breach of the standard of care. Powell v. Associated Counsel for Accused, 146 Wn. App. 242, 247, 191 P.3d 896 (2008). The superior court granted the motion to dismiss Powell's claims. Powell, 146 Wn. App. at 247. We affirmed. Powell, 146 Wn. App. at 250.

We conclude that <u>Powell</u> is distinguishable from the present case. In <u>Powell</u>, we acknowledged the rarity of Powell's sentencing error as a factor justifying the narrow exception to the actual innocence requirement. There, the court mistakenly imposed a felony sentence rather than a gross misdemeanor sentence. We noted that the maximum term of confinement for a gross misdemeanor is limited by statute to one year.[9] But Powell was sentenced for a class C felony to 38.25 months of confinement.

We viewed the error in <u>Powell</u> as particularly egregious because he served in excess of the statutory maximum sentence that could legally be imposed given the misdemeanor offense for which he pleaded guilty. The sentencing error in this case is qualitatively dissimilar to the error in <u>Powell</u>. Piris's correct offender score was 6 rather than 7 and yielded a standard range of 146 to 194 months instead of a standard range of 159 to 211 months. Generally, a sentencing court has lawful discretionary authority to impose any sentence falling within the correct standard range.[10] The court rejected Piris's request for an exceptional sentence of 48 months. It imposed a "bottom end" sentence of 159 months. It declined to impose the State's high-end recommendation of 211 months. While it is correct that miscalculation of the offender score renders the sentence unlawful, a sentence of 159 months falls within the 146 to 194 months

---

[9] RCW 9A.20.021(2):
Gross misdemeanor. Every person convicted of a gross misdemeanor in Title 9A RCW shall be punished by imprisonment in the county jail for a maximum term fixed by the court of up to three hundred sixty-four days or by a fine in an amount fixed by the court of not more than five thousand dollars, or by both such imprisonment and fine.

[10] Generally, a defendant is precluded from appealing a sentence within the standard range. RCW 9.94A.585(1); <u>State v. Mail</u>, 121 Wn.2d 707, 710, 854 P.2d 1042 (1993).

standard range for Piris's offense. Unlike in Powell, Piris's original sentence of 159

months did not exceed "the maximum that could lawfully be imposed" as was the case

in Powell. Appellant's Reply Br. at 4. It is not disputed that the original sentencing court

here could have lawfully imposed up to the high end of the standard range.

Piris's assertions rely on the unfounded assumption that the original sentencing

court would have imposed the bottom end of 146 months if informed of the correct

standard range.[11] That assertion rests on mere speculation. Given the record here, it is

impossible to know whether the original sentencing court would have imposed 146

months or 159 months based on a correct offender score calculation. In essence,

whether the appropriateness of 159 months drove the court's original sentencing

decision or the desire to impose the lowest possible sentence remains an unanswered

question.

Recognizing the uniqueness of the sentencing error in Powell, we observed,

> The highly unusual alleged facts of this case, whereby an alleged egregious error by defense counsel allowed a defendant to be sentenced to a term substantially longer than the maximum term allowed by statute, and the defendant actually served time in prison beyond the correct maximum term, are not likely to occur with any frequency.

Powell, 131 Wn. App. at 815 (emphasis added).

We also noted with concern that

> Powell's claim presents an allegation of particularly egregious attorney negligence—failure to advise the court that it was sentencing Powell for a felony, when he committed a misdemeanor. We do not imagine that this is a common oversight by defense attorneys. Carving a narrow exception to the rule requiring

---

[11] Piris's contentions that his case is controlled by Powell rests on the assumption that the original sentencing court undoubtedly would have imposed the "bottom end sentence" of 146 months.

proof of actual innocence will not dissuade attorneys from pursuing careers in criminal defense.

Powell, 131 Wn. App. at 814 (footnote omitted).

We concluded by holding, "[U]nder the facts of this case, we adopt a very limited exception to the rule requiring proof of actual innocence in a legal malpractice case stemming from a criminal matter." Powell, 131 Wn. App. at 815 (emphasis added). Powell leaves no doubt that the innocence exception granted in that case was grounded in a rare sentencing error—a defendant who mistakenly is sentenced to a felony when he committed a gross misdemeanor.[12]

---

[12] We note with concern the potential for opening a floodgate of criminal malpractice lawsuits involving claims of sentencing errors given the ever-increasing complexities of the Sentencing Reform Act (SRA).

"The difference of a single point may add or subtract three years to an offender's sentence. Therefore, the accurate interpretation and application of the SRA is of great importance to both the State and the offender. Because each offense must be analyzed under the law in effect at the time the offense was committed, each time the SRA is amended, it adds an additional level of complexity to the task of courts, as well as the prosecution, the defense, and the Department of Corrections. State v. Jones, 118 Wn. App. 199, 76 P.3d 258 (2003), is illustrative. In Jones, the trial court was required to analyze and attempt to harmonize three separate amendments to the SRA. As Judge Dean Morgan observed in Jones, "[i]t is extremely difficult to identify what statute applies to a given crime, much less to coordinate that statute with others that may be related." Id. at 211–12. Since the SRA was adopted in 1981, it has been amended by 181 session laws.FN4 The complexity and difficulty applying the SRA is exacerbated by each successive change to the SRA. Interpreting and harmonizing amendments to the SRA has increasingly occupied the time of both trial and appellate courts. In all likelihood this trend will continue. In the 58th legislature alone, 97 bills were introduced, which proposed a total of 262 changes to the SRA. Notwithstanding constant modifications to the law, courts strive to make the law clear, understandable, and predictable.

"FN4. Jones, 118 Wn. App. at 211 n.32 (listing 175 session laws that amended the SRA; however, absent from this list was LAWS OF 2003, ch. 53). The 58th legislature also amended the SRA with five session laws in 2004. LAWS OF 2004, ch. 38; LAWS OF 2004, ch. 94; LAWS OF 2004, ch. 121; LAWS OF 2004, ch. 166; LAWS OF 2004, ch. 176. In all, the 58th legislature considered 97 bills that would have amended the SRA. Of those 97 bills considered, 14 were enacted. www.leg.wa.gov/pub/billinfo/2003–

Falkner requires a criminal malpractice plaintiff to establish actual innocence for public policy reasons. Falkner, 108 Wn. App. at 123-24. "The public policy behind this requirement is that '[r]egardless of the attorney's negligence, a guilty defendant's conviction and sentence are the direct consequence of his own perfidy,' and, thus, cannot be the basis for civil damages." Falkner, 108 Wn. App. at 120 (alteration in original) (footnotes omitted) (quoting Wiley, 966 P.2d at 986)). Here, Piris's own criminal conduct led to his conviction and subsequent sentence. His criminal history led to an offender score calculation that yielded a 146 to 194 month standard range sentence. A sentence of 159 months falls within this standard range.

Piris also relies on a 2008 publication of the Legal Malpractice treatise by Ronald Mallen and Jeffrey Smith to argue that the "'issue of guilt or innocence is relevant, if the client's complaint is the fact of conviction, rather than the severity of the sentence or other consequences. But 'actual innocence' is 'not relevant if the attorney's error concerns the extent or severity of the sentence.'" Appellant's Br. at 4-5 (citation omitted) (quoting 3 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 26.13 (2007 ed.)).[13, 14]

---

04/chapter_to_bill_table.htm (last checked May 11, 2004); www.leg.wa.gov/wsladm/billinfor1/rcw_sl_selections.cfm?year=03 (last checked May 11, 2004); www.leg.wa.gov/wsladm/billinfo1/rcw_sl_selections.cfm (last checked May 11, 2004); www.leg.wa.gov/wsladm/billinfo/rcw_to-biil_table.cfm (last checked May 11, 2004)." In re Pers. Restraint of Christopher LaChappelle, 153 Wn.2d 1, 7, 100 P.3d 805 (2004).

[13] The 2008 version has been revised and no longer states that rule as absolute. It presently reads, "Guilt usually is not relevant if the attorney's error concerns the extent or severity of the sentence." 3 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 27.13, at 1057 (2008 ed.) (emphasis added).

None of the case authorities cited in <u>Legal Malpractice</u> for this statement apply to the present case. Unlike the facts here, those cases involve (1) sentences exceeding the statutory maximum, (2) jurisdictions that do not require proof of actual innocence, or (3) cases where actual innocence was not raised as a defense. Piris cites no controlling authority where a court carved out an exception to the actual innocence requirement for a sentencing error similar to the present facts.

Given our dispositive resolution of this issue, we need not address Piris's claim regarding collateral estoppel, King County's statute of limitations argument, or the motion to strike.[15]

## CONCLUSION

For the reasons discussed above, we decline to extend <u>Powell</u>'s narrow innocence exception to Piris's case. Piris cannot satisfy the innocence requirement because he pleaded guilty to two charges and he does not claim to be innocent. Accordingly, his criminal malpractice claim fails to survive summary judgment.

We affirm.

WE CONCUR:

---

[14] Nielsen cites the 2013 version of Mallen and Smith, also stating that guilt is "usually" not relevant. Br. of Resp't Nielsen at 18.

[15] Nielsen filed a motion to strike in this court on August 21, 2014. In it, he alleges that certain statements made by Piris are unsupported or misstatements of the respondents' position.