
# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

CHRISTOPHER PIRIS, )
)  No. 91567-9
              Petitioner, )
)
      v. )  En Banc
)
ALFRED KITCHING and JANE DOE )
KITCHING, husband and wife and their )
marital community; SOCIETY OF )
COUNSEL REPRESENTING ACCUSED )
PERSONS (SCRAP); ERIC NIELSEN and )
JANE DOE NIELSEN, husband and wife )
and their marital community; NIELSEN, )
BROMAN & KOCH P.L.L.C.; and )
KING COUNTY, )
)
              Respondents. )
_____ )  Filed    JUL 0 7 2016

     JOHNSON, J.—This case asks us to decide whether the "actual innocence"
element of a criminal malpractice[1] claim against a trial attorney, an appellate
attorney, and King County through its agency, the Department of Public Defense,
applies to the facts of this case to bar the action. The complaint here alleges

---

    [1] "Criminal malpractice" is a phrase that has been widely used "to denote 'legal
malpractice in the course of defending a [person] accused of crime.'" *Ang v. Martin*, 154 Wn.2d
477, 482 n.1, 114 P.3d 637 (2005) (quoting Otto M. Kaus & Ronald E. Mallen, *The Misguiding
Hand of Counsel—Reflections on "Criminal Malpractice,"* 21 UCLA L. REV. 1191, 1191 n.2
(1974)).

negligence based on the failure to schedule a resentencing hearing after the Court of Appeals remanded, and asserts that the defendant served more prison time than he otherwise would have had he been promptly resentenced. In this case, we hold that actual innocence is a necessary requirement to pursue the criminal malpractice claim and that no exception applies. We affirm the Court of Appeals, upholding the trial court's grant of summary judgment of dismissal in favor of all respondents.

FACTS AND PROCEDURAL HISTORY

Rape of a child in the first degree is a class A felony carrying a maximum term of confinement of life imprisonment. Christopher Piris was charged with three counts of first degree rape of a child, which occurred between September 27, 1990, and September 27, 1993. Piris pleaded guilty to two of those counts. The rape charges arose out of two separate incidents that occurred when Piris (who was between 11 and 13 years old at the time) had sexual intercourse with his stepbrother (who was then between 9 and 11 years old). Although the rapes occurred between 1990 and 1993 when Piris was a minor, he was charged in 1997 when he was 19 years old and in 1998 pleaded guilty to two counts of first degree rape of a child.

On May 14, 1999, Judge Charles Mertel of the King County Superior Court sentenced Piris to 159 months of imprisonment—the bottom of the standard sentencing range of 159 to 211 months—which was calculated using an offender

score of seven. At the sentencing hearing, Judge Mertel stated that although he did not find the facts justified an exceptional sentence downward, he was "going to sentence [Piris] at the bottom of the standard range[,] which is . . . 159 months." Clerk's Papers (CP) at 69. Alfred Kitching, an attorney with Society of Counsel Representing Accused Persons (SCRAP) (collectively Kitching), represented Piris at the trial court.

On appeal, Eric Nielsen, of the law firm Nielsen, Broman & Koch PLLC, represented Piris and argued that the trial court incorrectly calculated Piris's offender score. Division One of the Court of Appeals agreed in an unpublished opinion, finding that Piris should have been sentenced with an offender score of 6, rather than 7. This score would have resulted in a standard range sentence of 146 to 194 months, rather than 159 to 211 months. The court vacated Piris's sentence and remanded for resentencing. That order was filed on February 14, 2000, and the mandate issued on April 7, 2000.

The Court of Appeals sent a copy of the opinion to both Nielsen and Piris. Nielsen asserted that upon receipt of the opinion, "based on his invariable habit, custom and practice, he [would have] sent a copy of the opinion to Mr. Piris with a cover letter explaining the decision." CP at 98. Nielsen also claimed that upon receipt of the mandate, he wrote to Piris, enclosing the mandate and informing Piris that he was closing Piris's file. In addition, Nielsen "wrote to King County

Office of Public Defense to inform that office of the decision, . . . that a resentencing hearing should be scheduled," and that Piris would need representation. CP at 99. Nielsen "may also have sent a copy of the decision to SCRAP and to Mr. Kitching or informed them of the decision." CP at 99. Piris denies that he heard from Nielsen regarding the reversal of his sentence.

Piris was not resentenced for another 12 years. On May 7, 2012, Piris appeared before Judge Timothy Bradshaw (Judge Mertel had since retired) on an alleged violation of his supervised release terms. Realizing that Piris had never been resentenced, Judge Bradshaw imposed a sentence of 146 months for the two counts of rape of a child in the first degree. While this sentence was at the bottom of the corrected standard sentencing range, the record does not indicate the judge's reasoning for choosing this term of confinement. By the time Piris was resentenced, he alleged he had served all 159 months of his original term of imprisonment.

In March 2013, Piris filed this legal malpractice action against Kitching and Nielsen. He later amended his complaint to include King County. Piris alleged that due to his attorneys' negligence, he was incarcerated for 13 months longer than his sentence allowed. The defendants all moved for summary judgment, which the superior court granted, stating, "The basis for the dismissal is the 'actual innocence' requirement as set out in *Ang v. Martin*, 154 Wn.2d 477[, 114 P.3d

4

637] (2005)." CP at 249. The court denied Piris's motion for reconsideration, and Piris timely appealed.

In a published opinion, Division One of the Court of Appeals affirmed, holding that Piris had to prove he was actually innocent of the underlying criminal charges. The court held that he could not make such a showing "because he pleaded guilty to two charges and he does not claim to be innocent." *Piris v. Kitching*, 186 Wn. App. 265, 280, 345 P.3d 13 (2015). Piris petitioned this court, and we granted review. *Piris v. Kitching*, 183 Wn.2d 1017, 355 P.3d 1153 (2015).

ANALYSIS

The Court of Appeals affirmed summary judgment for the defendants. We review an order granting summary judgment de novo, "'taking all facts and inferences in the light most favorable to the nonmoving party.'" *Jackowski v. Borchelt*, 174 Wn.2d 720, 729, 278 P.3d 1100 (2012) (quoting *Biggers v. City of Bainbridge Island*, 162 Wn.2d 683, 693, 169 P.3d 14 (2007)). Summary judgment is appropriate where the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). To establish a claim for legal malpractice, generally, a plaintiff must prove

> (1) [t]he existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to

5

the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.

*Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992).

A plaintiff also bears the burden of proving two additional elements concerning proximate cause when alleging *criminal* malpractice. First, as a prerequisite, the plaintiff must have obtained postconviction relief. Second, the plaintiff must prove actual innocence of the underlying criminal charge by a preponderance of the evidence. At issue here is the actual innocence requirement.

We addressed this requirement in the context of a criminal malpractice case in *Ang*. In that case, the Angs were a married couple indicted on 18 criminal counts related to Social Security fraud. They hired two defense attorneys for trial. Before trial, the attorneys negotiated a plea bargain, which the Angs rejected, and the case proceeded to a jury trial. Five days into trial, the Angs' attorneys recommended a second plea deal. The Angs viewed this plea agreement as the least desirable. Mr. Ang "was allegedly told that Mrs. Ang could face sexual assault in prison," which convinced the couple to take the agreement offered during trial and plead guilty to 2 of the 18 counts. *Ang*, 154 Wn.2d at 480. The Angs sought an outside opinion from another attorney, who concluded that the government failed to meet its burden of proof and that the plea agreement the Angs accepted provided them no material benefit. Through another attorney, the Angs then successfully moved to

withdraw their pleas (which the judge had not formally accepted) and the matter moved to a bench trial. At the new trial, the government offered yet another plea agreement, which was rejected, and the Angs were acquitted on all 18 counts. The Angs sued their former attorneys, claiming malpractice, and the case went to trial before a jury. The jury found that the Angs failed to prove by a preponderance of the evidence that they were innocent of all criminal charges against them. The Angs appealed.

We held that for a plaintiff to bring a malpractice action against a criminal defense attorney, he or she must establish actual innocence of the underlying charge by a preponderance of the evidence. We reasoned that for legal causation to satisfy proximate cause, the actual innocence requirement was rooted in public policy: "To determine whether the cause in fact . . . should also be deemed the legal cause of [plaintiff's] harm, a court may consider, among other things, the public policy implications of holding the defendant liable." *Ang*, 154 Wn.2d at 482 (citing *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985)). We identified five factors of public policy rationale that mandated the actual innocence requirement in criminal malpractice cases: (1) prohibiting criminals from benefitting from their own bad act, (2) maintaining respect for the criminal justice system, (3) removing the harmful, chilling effect on the defense bar, (4) preventing suits from criminals who may be guilty but could have gotten a better deal, and (5)

preventing a flood of nuisance litigation. *Ang*, 154 Wn.2d at 485. We found that actual innocence is critical to a criminal malpractice claim and that "[u]nless criminal malpractice plaintiffs can prove by a preponderance of the evidence their actual innocence of the charges, their own bad acts, not the alleged negligence of defense counsel, should be regarded as the cause in fact of their harm." *Ang*, 154 Wn.2d at 485. These policy concerns still serve as the underpinning of the actual innocence requirement.

Piris does not ask us to overrule *Ang*, but asks us instead to recognize and apply an exception to the actual innocence requirement that was crafted in *Powell v. Associated Counsel for the Accused*, 125 Wn. App. 773, 106 P.3d 271 (2005) (*Powell* I), and *Powell v. Associated Counsel for the Accused*, 131 Wn. App. 810, 129 P.3d 831 (2006) (*Powell* II) (collectively *Powell*). While we do recognize the extremely narrow circumstances supporting the *Powell* exception, we find it inapplicable here. In *Powell*, Clint Powell pleaded guilty to a gross misdemeanor (solicitation to deliver a material in lieu of a controlled substance), which carried a maximum sentence of 12 months. Evidently, no one recognized this, and the trial court sentenced Powell for a class C felony and to 38.25 months of confinement. Once Powell discovered the error, he filed a personal restraint petition, which was granted, and he was resentenced. Powell served over 20 months in prison by the time he was released.

Powell sued his criminal defense attorney for legal malpractice and claimed damages for the time he served beyond an allowable 12-month gross misdemeanor conviction sentence. The court's decision centered on the fact that "Powell . . . served substantially *more time than the trial court was authorized to impose* for a gross misdemeanor." *Powell* I, 125 Wn. App. at 777 (emphasis added). The court found that "Powell's situation is closer to that of an innocent person wrongfully convicted than of a guilty person attempting to take advantage of his own wrongdoing." *Powell* I, 125 Wn. App. at 778. Powell's unauthorized felony sentence and his defense attorney's failure exhibited a "nexus between the malpractice and palpable harm . . . sufficient to warrant a civil action." *Powell* I, 125 Wn. App. at 778. The Court of Appeals concluded that the policy considerations *Ang* and other cases discussed did not apply to Powell's case. As a result, the court adopted "a very limited exception to the rule requiring proof of actual innocence in a legal malpractice case stemming from a criminal matter" where the trial court imposes a sentence they had no authority to order. *Powell* II, 131 Wn. App. at 815.

Here, Piris urges that his case is indistinguishable from *Powell*. He argues that the *Powell* exception dispenses the actual innocence requirement when a criminal malpractice plaintiff alleges malpractice only in sentencing. Piris emphasizes that the public policy considerations underpinning our decision in *Ang*

9

do not apply to malpractice in sentencing, and that there are no other sound policy reasons for requiring a malpractice plaintiff to show actual innocence when alleging sentencing errors.

Nielsen and Kitching counter that *Ang* controls and requires dismissal. They describe Piris's case as an example of a criminal defendant bringing a malpractice claim against his former attorneys because he "could have gotten a better deal." Resp't Nielsen's Suppl. Br. at 7, 12; Suppl. Br. of Resp'ts SCRAP & Kitching at 14. This claim is the very type of case the actual innocence requirement seeks to avoid. Nielsen argues that the exception in *Powell* is limited to malpractice resulting in an illegal sentence and that extending *Powell*'s narrow exception to other sentencing errors would undermine the public policies supporting the actual innocence requirement. Kitching, on the other hand, urges this court to go so far as to overrule *Powell*. He argues that it contradicts *Ang*, creates uncertainty, and could quickly become an exception that swallows the rule, thereby undermining the policies supported by the actual innocence requirement.

In the alternative, both Nielsen and Kitching argue that even if we embrace the reasoning in *Powell*, we should affirm the lower courts because Piris's case is distinguishable. Nielsen and Kitching point to the fact that Piris's original 159-month sentence was within the standard sentencing range of the corrected offender score as well as the statutory maximum of life imprisonment. *See* CP at 127 (2012

judgment and sentence), at 56 (1999 judgment and sentence).

As the Court of Appeals accurately noted, "The sentencing error in this case is qualitatively dissimilar to the error in *Powell*." *Piris*, 186 Wn. App. at 276. Both of Piris's sentences were within the court's authority. Piris's underlying conviction for first degree rape of a child was unaffected, and the later sentence reduction— even if the actual time served was more—was within the court's authority. This brings us exactly under the reasoning and policy considerations of *Ang*. Whatever sentence was imposed or served is based on Piris's conviction, and any sentencing modification remains within the court's authority and discretion to impose. While Judge Mertel did indicate an intent to sentence Piris at the bottom of the range at the original sentencing, it is too speculative to conclude he would have imposed anything less if provided the correct score. Our conclusion would be no different had, at resentencing, new defense counsel been successful in advocating for an exceptional downward sentence or if Judge Mertel had indicated that at the original sentence, a downward sentence might have been imposed. A claim for criminal malpractice cannot rise and fall based on what might have happened.

Here, if we allowed the civil case to proceed, we would need to arguably overrule *Ang* and allow Piris to benefit based essentially on his own criminal conduct. While a certain portion of the blame may understandably be aimed at his defense counsel for failing to follow through on scheduling resentencing, both of

Piris's sentences were the natural result of the crime to which he pleaded guilty. The maximum term for first degree rape of a child is life in prison. Piris pleaded guilty to two counts of this crime. Despite being given two different standard ranges for his crime (with the latter resulting in a slightly shorter sentence), his criminal acts naturally produced both sentences.

We find that the public policy concerns recognized in *Ang* require a plaintiff to prove actual innocence of an alleged crime when pursuing a criminal malpractice claim. Because any term of confinement Piris served was within the broad authority of the trial court, the argument for a *Powell* exception is inapplicable here. We need not overrule *Powell* but note it involved a unique and narrow set of circumstances where defense counsel and the court were evidently unaware of the class or level of crime to which Powell was pleading guilty. We expect defense counsel to know the level of crime for which a client is being sentenced. That circumstance in *Powell* is not present in Piris's case before us. We

affirm the Court of Appeals.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

Owens, J.

_____, J.

*Piris v. Kitching, et ux., et al.*

No. 91567-9

STEPHENS, J. (dissenting)—Christopher Piris successfully obtained post-conviction relief from a miscalculated sentence. But due to alleged attorney negligence, he was not timely resentenced and he spent more time imprisoned than his corrected sentence authorized. The majority holds that Piris cannot pursue malpractice claims against his defense attorneys unless he proves he is actually innocent of the underlying charges. I disagree. When a client wins postconviction relief for resentencing and attorney negligence results in the client's excessive imprisonment because the client did not timely receive the benefit of resentencing, it is no excuse to say that the client was subject to *some imprisonment*. Extending the "actual innocence rule" to the unique circumstances of this case serves only to perpetuate an injustice. I respectfully dissent.

*The Policies Underlying the Actual Innocence Rule Are Not*
*Implicated in This Case*

The majority holds that "the public policy concerns recognized in *Ang* [*v. Martin*, 154 Wn.2d 477, 114 P.3d 637 (2005)] require a plaintiff to prove actual

innocence of an alleged crime when pursuing a criminal malpractice claim." Majority at 12. I would recognize an exception to this rule for the circumstances presented in this case. The policies the court articulated in *Ang* are not furthered by requiring proof of actual innocence when a criminal defendant who receives postconviction relief from an excessive sentence is unable to benefit from that relief due to attorney negligence.

This court in *Ang* reasoned that proving actual innocence "is essential to proving proximate causation, both cause in fact and legal causation." 154 Wn.2d at 484. The court explained:

> Unless criminal malpractice plaintiffs can prove by a preponderance of the evidence their actual innocence of the charges, their own bad acts, not the alleged negligence of defense counsel, should be regarded as the cause in fact of their harm. Likewise, if criminal malpractice plaintiffs cannot prove their actual innocence under the civil standard, they will be unable to establish, in light of significant public policy considerations, that the alleged negligence of their defense counsel was the legal cause of their harm. Summarizing the policy concerns, the *Falkner* court observed that, "[r]equiring a defendant to prove by a preponderance of the evidence that he is innocent of the charges against him will prohibit criminals from benefiting from their own bad acts, maintain respect for our criminal justice system's procedural protections, remove the harmful chilling effect on the defense bar, prevent suits from criminals who may be guilty, [but] could have gotten a better deal, and prevent a flood of nuisance litigation."

*Id.* at 485 (alterations in original) (internal quotation marks omitted) (quoting *Falkner v. Foshaug*, 108 Wn. App. 113, 123-24, 29 P.3d 771 (2001)).

Piris's case does not implicate these policy concerns. First, Piris will not benefit from his own bad acts if he is allowed to proceed with his criminal malpractice action without proving actual innocence. *See id.* By pleading guilty,

-2-

Piris accepted responsibility for his crimes. He served his time. He is not seeking damages for the 146 months he spent imprisoned under his lawful sentence. *See* Clerk's Papers at 24. When a person has served his full authorized sentence, "[h]is unlawful restraint beyond that period was not a consequence of his own actions." *Powell v. Associated Counsel for the Accused*, 131 Wn. App. 810, 814, 129 P.3d 831 (2006). In addition to the Court of Appeals in *Powell*, courts in other states have appropriately recognized that there is no windfall to a criminal defendant whose malpractice claim does not challenge his guilt, but instead seeks redress for an unlawful sentence. *See Jones v. Link*, 493 F. Supp. 2d 765, 770 (E.D. Va. 2007) (holding the actual innocence requirement should not apply when the criminal malpractice plaintiff alleges his attorney's negligence resulted in a sentencing error, and noting that the exception would not allow the plaintiff to profit from his crimes "because plaintiff is still required to serve the legally warranted sentence"); *Hilario v. Reardon*, 158 N.H. 56, 960 A.2d 337, 344 (2008) (recognizing an exception to the actual innocence requirement when the criminal malpractice plaintiff lost the benefit of a plea agreement due to his attorney's unauthorized action, and noting the plaintiff would not benefit from his criminal conduct because he did not contest his guilt, and thus was not skirting responsibility for his conduct and its consequences); *cf. Barker v. Capotosto*, 875 N.W.2d 157, 166 (Iowa 2016) (rejecting the actual innocence requirement and noting that "while the notion that an individual should not 'profit from participating in an illegal act' is a good general principle, it is too general to

describe how our legal system actually operates" (citation omitted) (quoting *Humphries v. Detch*, 227 W. Va. 627, 712 S.E.2d 795, 800 (2011))).

Second, refusing to apply the actual innocence requirement in these circumstances will not undermine respect for the criminal justice system. *See Ang*, 154 Wn.2d at 485. Piris obtained relief from his unlawful sentence using the criminal justice system's appeals process. *See In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 568-69, 933 P.2d 1019 (1997) (holding a court acts without statutory authority when it imposes a sentence based on a miscalculated offender score and the defendant is entitled to resentencing, even if the original score is within the corrected standard range when there is evidence the trial court meant to impose a low-end sentence). But an appeal offers no remedy for the harm Piris alleges—the 13 months he served in excess of his corrected sentence because counsel failed to timely secure resentencing. Nor does affording him relief compete with or undermine respect for the criminal justice system. *See Powell*, 131 Wn. App. at 814 (recognizing criminal justice system provided no "remedy for the harm Powell suffered by serving eight months longer than the crime required" and malpractice action did "not discount or compete with the procedural protections afforded by our criminal justice system"); *see also Hilario*, 960 A.2d at 344 ("'Postconviction remedies exist to protect the constitutional rights of criminal defendants, not to protect negligent defense attorneys.'" (quoting *Rantz v. Kaufman*, 109 P.3d 132, 138 (Colo. 2005))); *cf. Mashaney v. Bd. of Indigents' Def. Servs.*, 302 Kan. 625, 355 P.3d 667, 683 (2015) ("'neither the societal interest in punishing only those criminal

defendants receiving fair trials nor the availability of [a postconviction relief proceeding] furthering that interest offers full relief for breach of the personal duty a lawyer owes a client—the actual interest directly at issue in a professional negligence case'" (quoting *Mashaney v. Bd. of Indigents' Def. Servs.*, 49 Kan. App. 2d 596, 313 P.3d 64, 86 (2013) (Atcheson, J., dissenting) (ultimately rejecting the actual innocence requirement for criminal malpractice plaintiffs))).[1]

Allowing Piris to proceed with his malpractice case without respect to whether he is innocent of the underlying charges in fact *enhances* respect for the justice system by underscoring that courts recognize the very real injury that occurs when a person is deprived of his liberty for longer than his sentence allows. *Cf., e.g., MacFarlane v. Walter*, 179 F.3d 1131, 1141 (9th Cir. 1999) (recognizing that "even a single extra day of incarceration is of substantial significance for constitutional purposes"), *vacated as moot sub nom. Lehman v. MacFarlane*, 529 U.S. 1106, 120 S. Ct. 1959, 146 L. Ed. 2d 790 (2000); *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (recognizing that an imprisoned defendant "loses a significant interest in his liberty for the period of his sentence" and that confinement can be extended beyond the original sentence "only with procedures satisfying due process"). A central goal of Washington's sentencing regime is to ensure that sentences are proportionate and just. *See* RCW 9.94A.010(1)-(2). When an individual serves more time than his

---

[1] The Kansas Supreme Court extended *Mashaney*'s holding to criminal malpractice cases predicated on an illegal sentence, finding, "*Mashaney*'s reasoning is equally applicable" under those circumstances. *Garcia v. Ball*, ___ Kan.___, 363 P.3d 399, 408 (2015).

lawfully imposed sentence authorizes, the result offends these principles, and a remedy should be available. *Cf. Johnson v. Babcock*, 206 Or. App. 217, 136 P.3d 77, 80 (2006) (holding that a criminal malpractice plaintiff who received and served a legally impermissible sentence and obtained postjudgment relief properly alleged harm and could proceed in his legal malpractice action; noting that "[i]ndeed, it seems disrespectful of legislative choices to deny that plaintiff was harmed when he received a sentence that exceeded the legal maximum").

Third, dispensing of the actual innocence requirement in these circumstances will not have a harmful chilling effect on the defense bar or result in a flood of nuisance litigation. *See Ang*, 154 Wn.2d at 485 (third and fifth policy justifications). As noted, the circumstances of this case are unique and unlikely to occur frequently. Although both of Piris's former attorneys complain of a chilling effect and potential flood of litigation, neither explains how these fears might play out. *See* Resp't Nielsen's Suppl. Br. at 12-13; Suppl. Br. of Resp'ts SCRAP & Kitching at 13, 19-20. Given the nature of Piris's allegations, such fears are wholly speculative. *See Powell*, 131 Wn. App. at 814 (recognizing the error in Powell's case was unique and egregious, the court found that "[c]arving a narrow exception to the rule requiring proof of actual innocence will not dissuade attorneys from pursuing careers in criminal defense"), 815 ("recognizing a limited exception to the rule requiring proof of actual innocence should not cause a flood of nuisance litigation" because the alleged facts were "highly unusual," the alleged attorney error "egregious," and the result—the criminal malpractice plaintiff spending a substantially longer term

incarcerated than was legally permissible—unlikely "to occur with any frequency"); *see also Hilario,* 960 A.2d at 344 (finding that a narrow exception to actual innocence will not hinder the defense bar).

Nor am I convinced that the criminal defense bar benefits from the de facto immunity from malpractice liability that applying the actual innocence rule provides in this circumstance. *See Barker,* 875 N.W.2d at 167 (noting that while the public has a strong interest in encouraging a robust defense bar, "it also has an interest in encouraging competent representation"). Attorneys who serve indigent persons in other contexts—for example, legal aid attorneys—are not exempt from potential malpractice claims, though we recognize the need to encourage pro bono representation. *See id.* And it is sufficient protection against nuisance litigation that a criminal malpractice plaintiff such as Piris must obtain postconviction relief and must support his claim with competent testimony as to the standard of care, breach, causation, and damages. *See id.* ("[W]e are not persuaded that an actual innocence requirement is needed to prevent a proliferation of nuisance suits. A criminal malpractice plaintiff still must obtain relief from the conviction. And unless the plaintiff's claim is based on standards of care and professionalism understood and expected by laypersons, the plaintiff will have to retain an expert to go forward." (internal citations omitted)).

Considering the burdens Piris undertakes as a legal malpractice plaintiff, there is no justification to extend the actual innocence rule to the unique circumstances of this case. Contrary to the majority's insistence that we would need to overrule *Ang*

in order to allow Piris's case to proceed, we need recognize only that *Ang* is premised on policy concerns that are not implicated in these unique circumstances.

Finally, it is important to recognize that Piris is not arguing he "could have gotten a better deal." *See Ang*, 154 Wn.2d at 485. He was entitled to be lawfully sentenced using his corrected offender score. *See In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 50 P.3d 618 (2002). At the end of the day, he served 13 months more than allowed under the sentence lawfully, albeit belatedly, imposed. There is no question about what "would have happened" in the absence of the alleged negligence. *See* majority at 11. His corrected sentence is definitively his only lawful sentence, and we need not speculate about the sentence he would have received had he been timely resentenced. Just as Piris would have no argument had the court on resentencing imposed the same 159-month sentence originally imposed, he should be allowed to rely on the fact that the resentencing court instead imposed 146 months.[2]

### *Proof of Actual Innocence Is Not Necessary to Proof of Causation for Piris's Criminal Malpractice Claim*

The majority states, "[I]f we allowed the civil case to proceed, we would need to arguably overrule *Ang* and allow Piris to benefit based essentially on his own criminal conduct. . . . [B]oth of Piris's sentences were the natural result of the crime

---

[2] For this reason, I disagree with the majority that the Court of Appeals' decision in *Powell* is distinguishable. *See* majority at 11-12. While a 159-month sentence remained within the range of possible sentences Piris faced upon resentencing, we know the sentence he in fact received. His actual 146-month sentence confirms that he suffered the harm of serving more time than his lawful sentence allowed, just as in *Powell*.

to which he pleaded guilty." Majority at 11-12. I disagree for two reasons. First, as noted, we do not need to overrule *Ang* to allow Piris to proceed with his criminal malpractice claim. We were concerned in *Ang* with plaintiffs alleging harm stemming from their attorneys' conduct during the guilt/innocence stage of the trial. In this case, Piris is alleging harm not at the guilt/innocence phase, or even at the sentencing phase, but at the phase of proceedings when he was entitled to receive the benefit of having secured postconviction relief. We therefore need to carve out only a small exception to *Ang*'s actual innocence rule to allow Piris to proceed with his claim.

Second, by asserting that Piris's sentences were the "natural result" of his conduct, the majority seems to hold that the underlying criminal conduct was the sole cause in fact of Piris serving 13 months more time than his corrected sentence allowed. This makes little sense under ordinary notions of tort causation. The harm Piris alleges is the time he spent in prison *beyond* his lawful sentence; this harm is not the direct result of his criminal acts, but of the alleged malpractice. *See Powell*, 131 Wn. App. at 813 (holding because Powell served the maximum sentence, "[t]he harm caused by his unlawful restraint was not the direct consequence of his own bad act"); *see also Jones*, 493 F. Supp. 2d at 770 ("where . . . an attorney's failure to object to a sentencing enhancement resulted in a higher sentence being imposed on plaintiff, the improper sentence was not the direct result of plaintiff's criminal behavior, but rather, it was the proximate result of his attorney's negligence"); *cf. Mashaney*, 355 P.3d at 683-84 (noting that requiring actual innocence to break the

chain of causation "'rests on a rigid application of but for causation inconsistent with general tort law principles'" that allow for superseding causes (quoting *Mashaney*, 313 P.3d at 86 (Atcheson, J., dissenting)).

Undoubtedly, Piris's criminal conduct was the "natural cause" of his 146-month sentence. But the additional 13 months he served on top of his lawful sentence was proximately caused by his attorneys' alleged negligence in not ensuring that he was timely resentenced. Piris should not have to prove his actual innocence as a precondition to seeking damages for these 13 months. From a practical standpoint, he is in the same position as the plaintiff in *Powell*; regardless of whether his excess sentence exceeded a statutory maximum or the confinement term the court imposed, it was unlawful. He should be entitled to proceed with his claim and attempt to prove that his harm resulted from his attorneys' negligence.

I would hold that a criminal malpractice plaintiff whose sentence is vacated and remanded but who does not timely receive the benefit of resentencing due to alleged attorney negligence need not prove he is actually innocent of the underlying criminal conduct to proceed with his criminal malpractice claim. Because the majority extends the actual innocence rule beyond its justifications in policy or causation principles, I respectfully dissent.

Stephens, J.

González, McCloud, J.

Fairhurst, C.J.

González, J.